

# The Attorney General

## of Texas

AUSTIN 11, TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

December 30, 1952

Hon. Murray L. Harris
County Attorney·
Wood County
Quitman, Texas

Opinion No. V-1568

Re: Tax exemption status of a
royalty interest belonging to
United Christian Missionary
Society, arising from the leas-
ing of lands of Jarvis Christian
College.

Dear Mr. Harris:

You present for the opinion of this office the question contained in your letter of December 2, 1952 which is copied below for a statement of the facts upon which our opinion will be based, with such additional facts as we may add disclosed from the file and our investigation of the records of the Secretary of State.

Your letter follows:

"Jarvis College received its name from Major and Mrs. J. J. Jarvis of Ft. Worth, Texas, who, in 1911, made a gift of 456 acres of land in Wood County, Texas, about one hundred miles east of Dallas, Texas. The Grant was made to the Christian Women's Board of Missions whose work is now incorporated in the continuing program of the United Christian Missionary Society 'on condition that said corporation keep up and maintain a school for the elevation and education of the Negro race on the land, or elsewhere in eastern Texas, in which school there shall be efficient and religious training.'

"On January 13, 1912, school began at Jarvis with thirteen elementary students. The surroundings were primitive, but the program went forward with courage and determination. Gradually, the transition was made from elementary to secondary level, then to junior college and, finally, to senior college work, with recognition by the Texas Department of Education in September, 1951. Enrollment in the Fall of 1948 was two hundred twenty-two pupils, using twenty-one buildings. The estimated valuation of the buildings and ground improvements, as of January, 1952, is approximately $534,000.00, and the equipment estimated value, $90,000.00.

"The acreage in the original Grant having been considered inadequate, so, in 1913 and 1924 the Christian Women's Board of Missions purchased adjoining land, making a total of 874½ acres available for the campus and farm.

"Jarvis Christian College is fully approved by the Southern Association of Colleges and Secondary Schools.

"Said school is owned and operated through a Board of Trustees by the United Christian Missionary Society, which is the organization which handles missionary and benevolent work for the Christian Church, or Deciples of Christ, from whom they receive a yearly contribution, which is used in the education and maintenance of said school, and, in addition thereto, money is received from the sale of oil and/or gas from royalties on oil produced from said properties.

"This institution (Jarvis College) is a non-profit educational institution, supported by the United Christian Missionary Society for the benefit of such members of the Negro race as wish to avail themselves of the educational facilities offered at this Institution.

"For many years prior to the discovery of oil upon said lands in 1940, all of the lands herein involved have been dedicated and actually used for educational purposes; some of the lands being used as campus; other lands being used as demonstration tracts in agricultural pursuits, and other lands used in reforestation courses conducted by the School for students enrolled therein, and a major portion of it used for buildings and campus.

"All of the land is under an Oil and Gas Lease and some of it is producing oil and gas, and the revenue therefrom is being used for said work hereinabove enumerated.

"In the year 1940 the Women's Christian Missionary Society executed oil and gas leases on the lands involved, reserving the usual and customary one-eighth royalty interest, and various leasehold operators are claiming under such leases and are now producing oil and gas from parts of these lands, and are paying to the United Christian Missionary Society the proceeds from the sale of such oil

and gas accruing to the one-eighth royalty interest
reserved in the leases.

"All funds received by the Women's Christian
Missionary Society as royalties are expended for
educational purposes in maintaining the College and
carrying out its co-educational program.

"In view of the above, are these royalties sub-
ject to the payment of ad valorem tax, or, are they
exempt from such taxation under Article 7150, Re-
vised Civil Statute, 1925?"

The records of the Secretary of State disclose that Jar-
vis Christian College, Hawkins, Texas, was incorporated February
11, 1939 with the following purpose clause:

"The purpose for which this corporation is
created is to support and maintain an educational
institution that will give to the colored youth of
Texas practical domestic, manual and agricultural
training, as well as high grade instruction in the
arts and sciences; the support and maintenance to
be under the general control of the Home Depart-
ment, United Christian Missionary Society, Deciples
of Christ."

The charter provides for directors and trustees not to
exceed in number twenty-five. There is no question as to the ex-
emption from ad valorem taxes of the buildings and the campus
upon which they are located, consisting of 874½ acres, of which
456 acres were donated or given in 1911 to the college by Major
and Mrs. J. J. Jarvis. This was inadequate for the purpose and
plans for the college and adjoining additional land was purchased
by the Christian Women's Board of Missions of the Deciples of
Christ which has the duty under its charter powers to support,
maintain and control the college in cooperation with the local Board
of Directors and Trustees. The corporation has no capital stock.

The question presented is the status of the one-eighth
royalty received by the college from leases made upon the land
constituting the campus for ad valorem state and county taxes; that
is, whether taxable or exempt.

Certain types of property are exempt from taxation by
the expressed terms of the Constitution, and this the Legislature
has no power to tax. Lower Colorado River Authority v. Chemical
Bank and Trust Company, 144 Tex. 326, 190 S.W.2d 48. Other kinds

422

of property, and the property here in question is of that character, may be exempt from taxation by the Legislature only by the authority conferred upon it under the Constitution of this State. This power is derived from Section 2 of Article VIII of the Constitution which reads in part as follows:

> " . . . the legislature may, by general laws, exempt from taxation . . . all buildings used exclusively and owned by persons or associations of persons for school purposes and the necessary furniture of all schools and property used exclusively and reasonably necessary in conducting any association engaged in promoting the religious, educational and physical development of boys, girls, young men or young women operating under a State or National organization of like character; . . ."

Pursuant to the authority thus conferred upon the Legislature by Section 2 of Article VIII of the Constitution quoted above, the Legislature enacted Article 7150, V.C.S., in language in part as follows:

> "All public colleges, public academies, and all endowment funds of institutions of learning and religion not used with a view to profit, and when the same are invested in bonds or mortgages, and all such buildings used exclusively and owned by persons or associations of persons for school purposes; . . ."

If the one-eighth oil royalty interest here in question is exempt from ad valorem taxes, it must be by virtue of the terms of Article 7150, V.C.S., quoted above. The exemption from taxation of the buildings and campus grounds consisting of the entire acreage owned and maintained by the college is not questioned, but does the same rule apply to the one-eighth oil royalty interest here in question owned by the college or by the Women's Christian Missionary Society of the Deciples of Christ, a religious organization? We think it makes no difference whether we consider the corporation the owner of the property or the Missionary Society. In either event, it is owned by persons or an association of persons and to that extent clearly falls within the purview of Article 7150, V.C.S., but our difficulty arises in determining whether or not the one-eighth oil royalty interest here involved "is used exclusively for school purposes". A careful search of the opinions of this Department and the decisions of our Appellate Courts fail to reveal that this identical question has heretofore been passed upon by this Department or the Courts of this State. In the recent case of Harris

v. City of Fort Worth, 142 Tex. 600, 180 S.W.2d 131, Justice Sharp of the Supreme Court, in approving what Mr. Justice Robertson said in the early case of Cassiano v. Ursuline Academy, 64 Tex. 673, said:

> "It has been the policy of the state since 1849 to encourage educational enterprises by exempting them from any share of the burdens of government. Pasch. Dig., arts. 5147, 5148, 7485, 7688.
>
> . . .
>
> "The education of the masses is now recognized as a function of state government. Those who, from charitable considerations, to forward sectarian views, or for private profit, have organized or conducted schools, have assisted the state in the performance of a duty it owes to its citizens which cannot be too thoroughly performed, and which the state has never assumed that it had either the means or the machinery of doing sufficiently well without private assistance. The Ursuline Academy is performing its part in this branch of the public service, and it should rather be encouraged by aids, than impaired in its usefulness by a tax upon its revenues."

From this case, we think it may be said that the same strictness of construction will not be indulged where the exemption is to religious and educational institutions that otherwise would be applied in considering exemptions to corporations created and operated for private gain or profit.

We think Texas will compare favorably with any State in the Union in the number, efficiency, and value of educational institutions owned and maintained by religious organizations. Such schools and colleges have been fostered and built up, and it has been the policy of our State to encourage them.

It is conceded in your statement of facts that Jarvis Christian College is a non-profit educational institution supported by the United Christian Missionary Society for the benefit of such members of the negro race as wish to avail themselves of the educational facilities offered by the college. It is likewise conceded that all of the land involved has for many years and is now dedicated and actually used for educational purposes as part of the campus, demonstration tracts in agricultural pursuits, and training in reforestation courses conducted by the college. In brief, all of the land is devoted to the educational activities of the college.

The Supreme Court, in construing the language "used with a view to profit" in the case of Harris v. City of Fort Worth, supra, said:

> "Whatever may be the ordinary signification of the words 'used with a view to profit,' we think that in these tax exemption provisions of the statutes they mean only that the fund be not used with a view to private gain or profit."

It is admitted that the one-eighth oil royalty here involved is expended in the furtherance of the educational activities of the college and, we think, meets the constitutional and statutory requirement that it is used for educational purposes and not for profit.

Neither Jarvis Christian College nor the Missionary Society possess the facilities to develop and produce oil from the land here in question even if they possessed the authority, which we doubt, It is, therefore, apparent that the only feasible and practical method of producing revenue from oil under the land was to execute an oil and gas lease such as was done here and leave the development to the lessees from which the one-eighth oil royalty is received by the college. We think the net result of what was accomplished by the execution of the oil and gas lease was to convey a determinable fee to the lessees of seven-eighths of the oil in place and retain the one-eighth royalty in the college or Missionary Society. The lessor, therefore, continued its ownership of the surface and one-eighth of the oil under the terms of the lease. In other words, there remains vested in the lessor the surface and one-eighth of the oil after the execution of the oil leases.

An oil and gas lease does not create the relationship of landlord and tennant. The lessor may sell such oil royalty in the same manner as applicable to the sale of other real estate under the laws of this State. Gulf Production Co. v. Warren, 99 S.W.2d 616 (Tex.Civ.App. 1936, error ref.).

We do not deem a discussion of the doctrine of severance which prevails in this State as to oil and gas in place and the surface upon the execution of an oil and gas lease essential to the determination of the question here involved.

It is sufficient to say that Jarvis Christian College or the Missionary Society is the owner of the surface and everything under it or over it, in the absence of a severance of the oil and gas under the surface. Therefore, upon the sale of the seven-eighths minerals and the retention by the lessor in the execution of an oil and gas

lease, seven-eighths of the minerals became vested in the lessee and the college remained the owner of the surface and one-eighth of the minerals. The ownership and possession of the surface would also extend to the possession and ownership of one-eighth of the minerals represented by the one-eighth royalty, and this remains true until such minerals and the surface are severed one from the other. An oil and gas lease is in effect a sale and conveyance of the oil and gas in place under the land described in the conveyance and is not in fact a lease in the ordinary acception of that term. Gulf Production Company v. Warren, supra. But, we do not construe the cases to hold that the one-eighth royalty retained by the lessor in the usual oil and gas lease operates as a severance of the one-eighth mineral interest from the surface. The one-eighth royalty owned and retained by the lessor is not severed from the surface estate. It continues to be the property of the lessor so long as it is in place as a part of the realty. Wagnor v. Wichita County, 298 Fed., pp. 818, 821.

We are, therefore, of the opinion that the exemption which prevails under the constitution and statutes of this State to the whole of the surface owned by the college or Missionary Society likewise extends to the one-eighth oil royalty constituting a part of the whole of the real estate owned by the college, and is, therefore, exempt from ad valorem taxes, and you are accordingly so advised.

## SUMMARY

Oil royalty produced from land owned by a non-profit educational college, operated by a religious organization, is exempt from ad valorem taxes if produced from land comprising the campus of the college, all of which is used and dedicated to the educational activities of the college to the same extent as the surface of the land. The oil royalty retained by the lessor, the owner of the surface, constitutes a part of the entire ownership of the land in that there has not been a severance of such estate. Hence, both the surface and the oil royalty are exempt from ad valorem taxation under the constitution and statutes

426

of this State if the royalty is likewise exclusively used in promoting the educational activities of the college.

APPROVED:                                          Yours very truly,

W. V. Geppert                                      PRICE DANIEL
Taxation Division                                  Attorney General

E. Jacobson
Executive Assistant
                                                   By _L. P. Lollar_
Charles D. Mathews                                 L. P. Lollar
First Assistant                                    Assistant


LPL:mw