

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

September 21, 1959

Honorable John C. White, Commissioner
Texas Department of Agriculture
Austin, Texas

Opinion No. WW-705

Re: Whether funds in the Egg
Law Enforcement Fund may
be transferred to the
Special Department of
Agriculture Fund for
policing, enforcing and
administration of the
Texas Egg Law under Sen-
ate Bill 32, Acts 55th
Legislature, Regular
Session, 1957 (Sec. 16,
Art. 165-8, V.T.C.S.).

Dear Mr. White:

You have requested our opinion as to whether Senate
Bill 32, Acts 55th Legislature, Regular Session, 1957, the
Texas Egg Law, codified in Vernon's Texas Civil Statutes as
Article 165-8, authorizes the transfer of moneys from the
Egg Law Enforcement Fund to the Special Department of Agri-
culture Fund.

The provision in question, Section 16 of Article
165-8, Vernon's Texas Civil Statutes, provides in part as
follows:

"The proceeds of such license fees shall
be paid into the State Treasury by the Commis-
sioner and placed by the State Treasurer in a
fund to be known as the Egg Law Enforcement Fund,
and shall be used only for the administration
and enforcement of this Act, and the entire amount
of fees so collected and deposited, or so much
thereof as may be necessary, is hereby appropriat-
ed to the Special Department of Agriculture Fund
for the policing, enforcing and administration
of this Act, and in addition to all other appro-
priations which may heretofore or hereafter be

made, the fees so collected under this Act during the biennium ending August 31, 1959, are hereby appropriated for the policing, administration and enforcement of this Act for said biennium." (Emphasis ours).

In construing a statute courts are not confined to the literal meaning of the words used since it is the intention of the Legislature which controls the meaning of statutory language. Edwards v. Morton, 92 Tex. 152, 46 S.W. 792 (1898); Gilmore v. Waples, 108 Tex. 167, 188 S.W. 1037 (1916); Welch v. State, 148 S.W.2d 876 (Tex.Civ.App. 1941); Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273 (1951); State v. Dyer, 145 Tex. 586, 200 S.W.2d 812 (1947); Eason v. Robertson, 288 S.W.2d 269 (Tex.Civ.App. 1956, error dism., w.o.j.).

Further, since the Legislature is not to be credited with doing or intending a vain or foolish thing, words or clauses in an act will not be given their literal meaning when such an interpretation would lead to absurd consequences or render a provision meaningless or fruitless or purposeless, provided that the language is reasonably susceptible of any other construction. Petroleum Casualty Co. v. Williams, 15 S.W.2d 553 (Comm.App. 1929); Magnolia Petroleum Co. v.Walker, 125 Tex. 430, 83 S.W.2d 929 (1935); Cramer v. Sheppard, 140 Tex. 271, 167 S.W.2d 147 (1943); Roby v. Hawthorne, 84 S.W.2d 1108 (Civ.App. 1935, error dism); Southwestern Gas & Electric Company v. State, 145 Tex. 24, 193 S.W.2d 675 (1946); Pittman v. Time Securities, 301 S.W.2d 521 (Tex.Civ.App. 1957); State ex rel Childress v. School Trustees of Shelby County, 150 Tex. 238, 239 S.W.2d 777 (1951); Imperial Production Corp. v. Sweetwater, 210 F.2d 917 (1954).

One term may even be substituted for another in construing a statute in order to carry out the manifest intent of the Legislature, as disclosed by the entire enactment. Davis v. State, 88 Tex.Crim. 183, 225 S.W. 532 (1920); State v. Huber Corp., 145 Tex. 517, 199 S.W.2d 501 (1947); Roby v. Hawthorne, 84 S.W.2d 1108 (Civ.App. 1935, error dism.); Harris v. Fort Worth, 142 Tex. 600, 180 S.W.2d 131 (1944).

Statutes which deal with the same general subject or purpose or which relate to the same things are considered in pari materia and, even though passed at different sessions of the Legislature, may be looked to in arriving at a proper construction of a statute. 39 Tex.Jr. 253, Sec. 135, Statutes,

Rosebud Independent School Dist. v. Richardson, 2 S.W.2d 513, (Civ.App. 1928); Winterman v. McDonald, 129 Tex. 275, 102 S.W.2d 167 (1937); Gramm v. Coffield, 116 S.W.2d 1089 (Civ.App. 1938, error dism).

Bearing in mind the foregoing rules of statutory construction, it is apparent that the word "appropriated" where underlined in the above quoted provision of Section 16 of Article 165-8, Vernon's Texas Civil Statutes, means "transferred" to the Special Department of Agriculture Fund. The legislative intent is clear in this respect since the Legislature would be attempting to do a foolish or meaningless thing by appropriating the same funds twice for the same purposes in the same section if the word "appropriated," as first used in this Section, does not mean "transferred." The only logical deduction which can be made from the quoted provision is that the Legislature intended to remove moneys from the Egg Law Enforcement Fund to the Special Department of Agriculture Fund when it used the word "appropriated" the first time and intended to appropriate such funds so removed for the purpose of policing, enforcing and administering the Texas Egg Law for the biennium ending August 31, 1959, when the word appropriation was used the second time. It is significant that the word "appropriated," as first used in the provision, does not relate to any specific period as is customary in the case of appropriation provisions.

We are not apprised of any case in which it has been held that the words "appropriated" and "transferred" are mutually exclusive or inconsistent. Hence, the term "appropriated," as first used in the quoted provision, may reasonably be construed to provide for a transfer of moneys from one fund to another in light of the entire provision.

This conclusion is confirmed by House Bill 133, Acts 55th Legislature, Regular Session, 1957, the General Appropriation Bill. It is seen from that Act, a statute in pari materia, that the appropriations for the Department of Agriculture were made from the Special Department of Agriculture Fund, the General Revenue Fund and the Market News Cash Fund only. The Egg Law Enforcement Fund was not mentioned as a source of revenue for the Agriculture Department in the General Appropriation Bill. The same Legislature which enacted the Texas Egg Law obviously had in mind that license fees paid into the Egg Law Enforcement Fund were to be transferred to the Special Department of Agriculture Fund.

This same legislative intent is further evidenced by House Bill 4, Acts 56th Legislature, Third Called Session, 1959, the General Appropriation Bill, in that the Egg Law Enforcement Fund is not mentioned as a source of revenue for the Department of Agriculture while the Special Department of Agriculture Fund is so mentioned. Any appropriation for enforcement of the Texas Egg Law which was made by Section 16 of the Texas Egg Law from the Egg Law Enforcement Fund would have expired prior to the effective date of the 56th Legislature's General Appropriation Bill. Hence, it is apparent that the 56th Legislature regarded moneys in the Egg Law Enforcement Fund as having been transferred to the Special Department of Agriculture Fund by the above quoted portion of Section 16, Article 165-8, the Texas Egg Law.

Accordingly, it is our opinion that license fees paid into the Egg Law Enforcement Fund are authorized by the above quoted portions of Section 16, Article 165-8, Vernon's Texas Civil Statutes (Senate Bill 32, Acts 55th Legislature, Regular Session, 1957, the Texas Egg Law) to be transferred to the Special Department of Agriculture Fund for policing, enforcing and administration of the Texas Egg Law.

## SUMMARY

License fees paid into the Egg Law Enforcement Fund are authorized by Section 16, Article 165-8, Vernon's Texas Civil Statutes (Senate Bill 32, Acts 55th Legislature, Regular Session, 1957, the Texas Egg Law) to be transferred to the Special Department of Agriculture Fund for policing, enforcing and administration of the Texas Egg Law.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Henry G. Braswell*

Henry G. Braswell
Assistant

HGB:mfh

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

William D. Armstrong
Robert T. Lewis
Fred Werkenthin
Charles D. Cabaniss
Tom I. McFarling

REVIEWED FOR THE ATTORNEY GENERAL
BY:  W. V. Geppert