**SABINE PILOTS ASSOCIATION et al.,**
**Appellants,**

v.

**LYKES BROTHERS STEAMSHIP, INC.**
**et al., Appellees.**

No. 10867.

Court of Civil Appeals of Texas.

Austin.

April 26, 1961.

Rehearing Denied May 17, 1961.

Eastham, Watson, Dale & Forney, John P. Forney, Jr., Houston, for appellants.

Robert Eikel, Houston, Orgain, Bell & Tucker, Beaumont, Royston, Rayzor & Cook, Houston, for Bloomfield S.S. Co. and others as cross-appellants

Robert Eikel, Houston, Orgain, Bell & Tucker, Beaumont, Royston, Rayzor & Cook, Houston, for appellees.

GRAY, Justice.

This is a suit for declaratory judgment. It was brought by twenty-three named per-

sons individually and as Sabine Pilots Association against four steamship companies operating vessels under registry and which vessels customarily dock at one or more, or all, of the ports along the Sabine-Neches Waterway. The purpose of the suit is to construe arts. 8267, 8268 and 8224, Vernon's Ann.Civ.St., to determine the legality of the schedule of rates fixed by the Board of Commissioners of Pilots for the Sabine District, and to determine the rights of the parties hereto in connection with pilotage fees heretofore charged in accordance with said schedule. The prayer is that the court find and determine that the schedule of rates and fees fixed by the Board are legal under art. 8274, and that the court make a full and complete declaration of the rights, liabilities, duties and legal relations of the parties with regard to such rates, fees and statutes, and for general relief.

The steamship companies answered, interposed a defense of res judicata, that the schedule of rates fixed by the Board are unlawful because contrary to the express provisions of the statute, and that the statutes are clear and unambiguous and are not susceptible to any construction permitting a charge in excess of the rates set out in the statute. They prayed that art. 8274 be declared clear and unambiguous and that pilotage rates and fees exceeding the rates fixed by that article be declared unlawful.

A nonjury trial was had and a judgment was rendered to the effect that the decision in Bloomfield Steamship Co. et al. v. Sabine Pilots Ass'n, 5 Cir., 262 F.2d 345, is not res judicata of this suit and that this suit is not a collateral attack on that judgment; that art. 8274 is clear and unambiguous and fixes the maximum rates and fees and that the same are applicable to the Sabine District; that the Board derives its authority from the statutes of Texas; that the schedule of rates and fees published by the Board violates art. 8274 as applied to nonstop vessels passing through Port Arthur to ports along the Sabine-Neches Waterway above that port; that arts. 8267 and 8268 authorize the Board to hear and determine disputes as to pilotage rates and fees; that an aggrieved party has the right to appeal from a decision of the Board to a court having cognizance of the case, which is a district court of Texas; that a suit to recover pilotage fees is premature until the jurisdiction of the Board is invoked and the administrative remedy is exhausted; that the Sabine Pilots had the right to rely on the rates fixed by the Board until such rates were attacked and the administrative remedies exhausted; that the charge of the rates fixed by the Board does not constitute illegal exaction and that the charges of such rates are not void but voidable and are not recoverable by the steamship companies.

All parties have appealed from the above judgment and will be here referred to as they were in the trial court: the pilots as plaintiffs and the steamship companies as defendants.

The following statement will help understand the questions presented.

The Sabine-Neches Waterway as it now exists extends from the Gulf of Mexico upstream along the Sabine and the Neches Rivers. Originally the only port on the waterway was the port of Sabine located only a few miles from the whistle buoy in the Gulf. However, by dredging the rivers, ports upstream to Orange on the Sabine and Beaumont on the Neches have been opened to ocean going vessels. Port Arthur is located upstream from Sabine and vessels going to or from upstream ports pass through Port Arthur. In May 1951 and in May 1955 the Board published a schedule of pilotage charges based on the gross tonnage of the vessel being piloted. The 1955 schedule of charges ranged from $6.50 to $8 per draft foot of the vessel being piloted.

In 1956 the defendants filed suit against the plaintiffs in the United States District Court for the Eastern District of Texas to recover the difference in the fees actually charged and paid to plaintiffs under the schedule fixed by the Board to the extent

that the same were in excess of the maximum fixed by art. 8274. That court rendered a judgment for the plaintiffs but its judgment was reversed. Bloomfield Steamship Co. v. Sabine Pilots Ass'n, supra. It was there held that the charges violated art. 8274 and the cause was remanded for a determination of the damages. Plaintiffs filed petition for writ of certiorari to the Supreme Court. That petition is now pending.

The parties here say that because art. 8274 has never been construed by the Texas appellate courts the Supreme Court of the United States has delayed action on plaintiffs' petition for writ of certiorari pending construction of that statute by Texas courts. See: 42 Tex.Jur., Sec. 3, p. 814.

We quote, in order, the provisions of arts. 8267, 8268 and 8274 as amended in 1955, applicable here:

"The board shall have authority, within the limits provided in this subdivision, to fix rates of pilotage * * * of which proceedings a record shall be kept; * * *

"The board shall be authorized and required to hear and determine all disputes that may arise respecting pilots and pilotage; * * * but from any decision of said board an appeal may be taken to the court having cognizance of the case. * * *

"The rate of pilotage, which may be fixed under Articles 8267 and 8269, on any class of vessels shall not, in any port of this state with the exception of the Port of Galveston, exceed Six ($6.00) Dollars for each foot of water which the vessel at the time of piloting draws and such rate shall not, in the Port of Galveston, exceed Five and 50/100 ($5.50) Dollars for each foot of water which the vessel at the time of piloting draws; * * * *"

Art. 8269 applies to small ports and its provisions are not applicable here.

It is to be noticed that art. 8268 provides for an appeal from the Board's order but does not fix the time in which the appeal must be taken.

The defendants, by points, contend and the plaintiffs, by points, deny, that the trial court erred in holding that the defendants were not entitled to recover pilotage charges illegally exacted because they did not exhaust their administrative remedy under art. 8268 and did not appeal from the decision of the Board.

The defendants say that in fact they protested the Board's decision and appealed from it. In view of our disposition of the above points it is not necessary to decide this contention of defendants and it will not be further noticed.

■ It is our opinion that the Board acted without lawful authority in fixing the rates of pilotage above $6 per foot of water which the vessel draws at the time of piloting. This is true because art. 8267 authorizes the Board to fix rates of pilotage "within the limits provided in this subdivision" and art. 8274 provides that the rate of pilotage "which may be fixed * * *" shall not exceed $6 per each foot of water the vessel draws at the time of piloting. The Board derives its authority to fix rates from the statutes and those statutes clearly limit that authority to the maximum rate stated in art. 8274. The Board has exceeded its authority and its acts to that extent are void for the all sufficient reason that such excessive rates were fixed without lawful authority.

■ It is our opinion that because the Board exceeded its authority in fixing the complained of rates the rule requiring defendants to exhaust their administrative remedy before resorting to the courts for relief is not applicable. James v. Consolidated Steel Corp., Ltd., Tex.Civ.App., 195 S.W.2d 955. Er. ref., n. r. e.; 73 C.J.S. Public Administrative Bodies and Procedure, § 41 at page 354.

Our holding that the action of the Board in fixing rates in excess of the maximum fixed by art. 8274 is void and that the defendants were not required to exhaust their administrative remedy before resorting to the courts makes it unnecessary for us to here decide the meaning of the term "court having cognizance of the case" as used in art. 8268.

■■ Defendants say the judgment in Bloomfield Steamship Co. v. Sabine Pilots Ass'n, supra is res judicata of the proceeding here. We have shown that that cause is pending on petition for writ of certiorari and for which reason it has not reached the stage when that judgment can neither be set aside nor reversed and it is not res judicata. 26 Tex.Jur. Sec. 384, at pp. 80–81. The rule in Texas is that an appeal from a judgment prevents its operation as res judicata. Ray v. Hasley, 5 Cir., 214 F.2d 366.

The plaintiffs say that the trial court erroneously construed art. 8274 because such construction is contrary to the intention of the Legislature; it brings about inequitable results in the practical application of the statute; it authorizes the fixing of rates only on the draft footage of vessels and disregards other factors; it disregards the legislative intent manifested by the history of the Pilotage Act and especially art. 8274, and such construction disregards the fact that the Board has consistently authorized additional charges for vessels piloted above Port Arthur.

■ Art. 8267 plainly states that the Board shall have authority to fix rates of pilotage within the limits provided. Art. 8274 provides a limit of $6 for each foot of water that the vessel draws at the time of piloting. There is nothing indefinite or misleading in these provisions, and the remaining language of the statutes does not confuse this meaning. In this situation there is no occasion to look elsewhere than to the words of the statute to determine its meaning and the words of the statute is the best evidence of the legislative intent.

McGuire v. City of Dallas, 141 Tex. 170, 170 S.W.2d 722; Railroad Commission of Texas v. Texas & New Orleans R. Co., Tex.Civ.App., 42 S.W.2d 1091. Er. ref.

■ The complaints that art. 8274 as worded causes inequitable results, ignores all factors except the draft footage of vessel being piloted, disregards the legislative history of the Act and disregards the fact that the Board has in the past allowed additional charges for vessels piloted above Port Arthur are without merit. These complaints are answered by the fact that the Legislature has expressed its intent by enacting statutes free from ambiguity and if inequities result then a matter for the Legislature and not the courts is presented. The history of the Act becomes important only when the language used leaves the legislative intent obscure. Harris v. City of Fort Worth, 142 Tex. 600, 180 S. W.2d 131; 39 Tex.Jur., Sec. 122, p. 229.

■ It is here contended that because the Board has construed art. 8274 as authorizing it to fix pilotage rates in excess of $6 per draft foot of the vessel being piloted—the maximum fixed by that statute—that the court should adopt that construction. The rule of administrative, or departmental, construction of a statute is well established in this State. That rule is that courts will ordinarily adopt and uphold the construction of a statute by an administrative or departmental office charged with its administration if the statute is ambiguous or uncertain and the construction so given it is reasonable. Teacher Retirement System of Texas v. Duckworth, 153 Tex. 141, 260 S.W.2d 632, 264 S.W.2d 98. However this rule has no application to a statute, such as the one before us, that is unambiguous, is not of doubtful construction or application. Mc-Callum v. Associated Retail Credit Men of Austin, Tex.Com.App., 41 S.W.2d 45. The Board's construction of art. 8274 as authorizing it to fix pilotage rates in excess of the maximum there provided is void because such construction conflicts with the

statute. Teacher Retirement System of Texas v. Duckworth, supra.

The overcharges (charges in excess of $6 per draft foot of vessels being piloted) paid by defendants were paid under administrative compulsion and since the Board was without legal authority to fix charges in excess of the maximum provided by art. 8274 such overcharges were and are void, were illegally exacted and defendants are entitled to recover the same.

The judgment of the trial court is reversed insofar as it requires defendants to first exhaust their administrative remedy before filing suit to recover overcharges of pilotage fees; that such overcharges do not constitute illegal exaction, and that such overcharges are voidable only and not recoverable by defendants. Judgment is here rendered that such overcharges were and are void and that in a proper proceeding the same may be recovered by defendants. In all other respects the judgment of the trial court is affirmed.

Reversed and rendered in part and in part affirmed.