

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

December 28, 1962

Honorable Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. WW-1514

Re: Whether, under the facts
submitted, a corporation
chartered by a Police
Officers' Association is
exempt from the fran-
chise tax required by
Chapter 12, Title 122A,
Taxation--General, V.A.T.S.

Dear Mr. Calvert:

This is in reply to your request for an opinion on
whether a certain corporation chartered by a Police Officers'
Association is exempt from the payment of franchise taxes.

Article 12.01, Chapter 12, Title 122A, V.A.T.S., imposes
a franchise tax in words as follows:

"(1) Except as herein provided, every domestic
and foreign corporation heretofore or hereafter
chartered or authorized to do business in Texas
or doing business in Texas, shall, on or before
May 1st of each year, pay in advance to the Secre-
tary of State a franchise tax for the year
following ... "

Article 12.03 of said Chapter 12 provides in part as follows:

"The franchise tax imposed by this Chapter shall
not apply to ... corporations organized ... for
strictly educational purposes, or for purely
public charity ..."

You do not give any facts as to how the corporation in
question is actually operated; but you state the purpose
clause of its charter, and we will answer on the assumption
that it is operated strictly in accordance with the purpose
clause. The purpose of the corporation is stated as follows:

"The purpose or purposes for which the Association
is formed are as follows: The support of any benevo-
lent, charitable, or educational undertaking and
particularly to promote and develop friendly and

fraternal spirit among all of the employees of
the Police Department, and to generally increase
the efficiency of the Police Department by pro-
viding lectures, instructions, written material,
and other educational aids in their duties."

The answer to your question as to whether this corporation
is liable for franchise taxes depends on whether, under the
words of its purpose clause, this corporation is organized
"for strictly educational purposes, or for purely public
charity."

We have been unable to find a court decision directly in
point, but some cases construing other statutes are helpful
in deciding this question. In the case of Conley v. Daughters
of the Republic, 106 Tex. 80, 156 S.W. 197, the Supreme Court,
in deciding whether a corporation was lawfully created under
the statute authorizing a private corporation for "educational
undertakings," said:

"Whatever educates is within the meaning of
'educational undertaking'. Education in the
sense as used in the statute includes: 'In its
broadest sense, ... not merely the instruction
received at school or college, but the whole
course of training, moral, intellectual and phy-
sical; is not limited to the ordinary instruction
of the child in the pursuits of literature. It
comprehends a proper attention to the moral and
religious sentiments of the child. And it is
sometimes used as synonymous with '"learning"'.
14 Cyc. p. 1230."

The general trend of the Legislature of Texas to be generous
in its exemption from taxation of educational projects is
stated in the case of Harris v. City of Fort Worth, 142 Tex.
600, 180 S.W.2d 131, as follows:

"The Constitution and the Statutes of this
State evince a liberality in the exemption from
taxation of property for educational or religious
purposes."

A case in another state that is helpful in deciding
this question is the case of Ancient and Accepted Scottish
Rite of Freemasonry v. Board of Commissioners, 122 Neb. 586,
241 NW 93, in which the Supreme Court of Nebraska decided
that a Scottish Rite Temple was exempt from ad valorem taxes

under the Nebraska statute exempting "property owned and used exclusively for educational, religious, charitable ... purposes," even though the building included a banquet hall and was also used for social activities for its members; and in its decision the Court said:

" ... lexicographers and the courts agree in defining 'educational' as pertaining to 'education.' The latter word taken in its full sense is a broad, comprehensive term and may be particularly directed to either mental, moral or physical faculties, but in its broadest and best sense it embraces them all, and includes not merely the instructions received at school, college, or university, but the whole course, of training--moral, intellectual, and physical.

"An educational purpose is synonymous with an educational undertaking, and whatever educates is within the meaning of an 'educational undertaking.'"

We are not unmindful of the recent case of Phinney v. Dougherty, 307 Fed.2d 357, in which the United States Court of Appeals for the 5th Circuit held that a gift to a student aid fund for the benefit of a university fraternity was not exempt from income taxes under the statute exempting income to corporations "organized and operated exclusively for educational purposes." The exemption was not allowed in that case because the court, apparently, approved the finding of the Treasury Department to the effect that the fraternity was "operated to provide most importantly social club facilities" and that the "fraternity house serves both the educational purposes of the University and the social purposes of the fraternity." We do not think that the Phinney case would control this case, because in this case we must presume that that the corporation in question does only those things stated in the purpose clause of its charter, which does not contemplate social purposes.

An examination of the purpose clause shows that the purpose stated therein can be divided in two parts, the first part beginning with the words "the support of any benevolent, charitable, or educational undertaking," and the second part reading in full as follows: " ... to generally increase the efficiency of the Police Department by providing lectures, instructions, written material, and other educational aids in their duties."

We unhesitatingly are of the opinion that the <u>second</u> <u>part</u> of the purpose clause is "for strictly educational purposes" within the terms of the exemption statute; and the words are so plain that we do not believe that there could be any argument about them.

We are also of the opinion that the <u>first</u> <u>part</u> of the purpose clause is "for strictly educational purposes, or for purely public charity;" but we realize that there could be some argument in this regard, and for that reason we will discuss the words of the <u>first</u> <u>part</u> of the purpose clause which says:  "The support of any benevolent, charitable, or educational undertaking and particularly to promote and develop friendly and fraternal spirit among all of the employees of the Police Department ... ."  The words "benevolent, charitable, or educational undertaking" clearly come within the provision of Article 12.03, exempting a corporation organized for "educational purposes or for purely public charity."  The additional words of the purpose clause that follow, to-wit, "and particularly to promote and develop friendly and fraternal spirit among all of the employees of the Police Department," are not as clear in that regard; but we construe those words to be an explanation or amplification of the preceding words, that is, they particularize a specific phase of the main subject, that of benevolence, charity and education.

It is our opinion that the corporation in question, under the purpose clause set out above, is exempt from the franchise tax imposed by Article 12.01 Taxation--General, V.A.T.S.

## SUMMARY

A corporation organized by a Police Officers' Association to support a "benevolent, charitable, or educational undertaking and particularly to promote and develop friendly and fraternal spirit among all of the employees of the Police Department" and to increase efficiency by providinglectures, instructions, written material and other eucational aids, is exempt under Article 12.01, Taxation-- General, V.A.T.S. from the payment of

a corporation franchise tax.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Cecil C. Rotsch
Assistant Attorney General

CCR:bjh

APPROVED:

Opinion Committee:

W. V. Geppert, Chairman

Pat Bailey
Dudley McCalla
Norman Suarez
Tom Peterson

REVIEWED FOR THE ATTORNEY GENERAL
BY:  LEONARD PASSMORE