**WEST GULF MARITIME ASSOCIATION, et al., Appellants,**

v.

**SABINE PILOTS ASSOCIATION, et al., Appellees.**

**No. 8671.**

Court of Civil Appeals of Texas, Beaumont.

May 21, 1981.

As Amended on Denial of Rehearing June 11, 1981.

Robert Eikel, Houston, for appellants.

James R. Meyers, Asst. Atty. Gen., Austin, Gilbert Low, Orgain, Bell & Tucker, Beaumont, for appellees.

KEITH, Justice.

Plaintiffs below appeal from an order dismissing their suit, and we will state, very briefly, the contentions of the parties.

West Gulf Maritime Association, a trade association, brought suit on behalf of its member companies that are consignees of ocean vessels using the Ports of Port Arthur, Beaumont, and Orange, and was joined by several of its member companies. The trial pleadings named as defendants several individuals, each of whom was a duly appointed, qualified, and acting branch pilot under the provisions of *Art. 8270.*[1] Also named as defendants were the members of the Commissioners of Pilots for the

1. All statutory references are to Vernon's Annotated Statutes and Codes, Water—Auxiliary Laws (1979 Pamphlet), unless otherwise indicated.

Ports of Beaumont, Port Arthur, Orange (and intermediate docking facilities of the Sabine Area), the individual members of said Commission, and the Sabine Pilots Association, composed of the several branch pilots earlier named defendants.

Plaintiffs sought judicial declaration that the charges made by the branch pilots, authorized by the Commission, if in excess of the 1975 rates, were unlawful. Another facet of the suit challenged the portion of the "outer-bar" pilotage charges for services in the Gulf of Mexico outside the Sabine Bar.

The several defendants duly answered and, after a hearing, the trial court dismissed plaintiffs' suit, and this appeal followed such action.

Plaintiffs contend that the order of the Commissioners is invalid because the defendants did not follow the provisions of *Art. 8267, Subdiv. (C)*, in that the pilots did not produce, nor did the Commissioners require the pilots to produce evidence of their earnings and expenses so that the Commissioners could not and did not determine what was adequate and reasonable compensation for the pilots.

■ The defendants dispute the primary contention but urge the preliminary jurisdictional question of standing to raise the question. The statute, *Art. 8267(C)(2)*, reproduced in the margin,[2] does not require a formal hearing when a written objection to proposed rates is not received within twenty days after notice is sent. Subsequent provisions of *Subdiv. (C)* prescribe the nature of the hearing, the procedural rights of the parties, and some of the factors to be considered by the Commissioners in granting, rejecting, or modifying such request for additional rates when a timely objection is lodged.

Defendants' witness, Sue Landry, testified without contradiction that she *sent* the notices of the rate application on March 23, 1979 by depositing the same in the mail at Port Arthur. L. O. Dazey, Chairman of the Sabine District of the West Gulf Maritime Commission, one of the plaintiffs, testified that he actually received the notice on March 29, but declined to testify that the objections to such application were given to any of the Commissioners within twenty days after it was sent. Plaintiffs made no attempt to prove that any Commissioner was given notice of an objection within the 20-day period following the sending of the notice of the application.

It is readily apparent that the legislative draftsmen of *Subdiv. (C)*, supra, envisioned an informal type of mechanism to be administered by laymen when there was no real opposition to a requested rate increase; and, only when some "legitimately interested party" objected within the 20-day period after the notice of the application had been sent was a formal hearing required.

Once such a legitimately interested party timely filed his objection, a formal hearing was required and detailed substantive and procedural provisions were set out in the later subsections of the statute.

Upon the record which is before us, the trial court found and embodied in the judgment findings that the plaintiffs had failed to "meet their burden of proof to show that objection was received by the Commissioners of Pilots within twenty days after notice was sent."

Our jurisdictional problem is analogous to that which is frequently encountered in venue disputes. Under *Tex.R.Civ.P. 86*, a plaintiff desiring to maintain venue in the county of suit is required to file a controverting affidavit within ten days after he or his attorney shall have received the copy of the plea of privilege. Our Supreme Court held in *Bogle v. Landa*, 127 Tex. 317, 94 S.W.2d 154, 155 (1936), in the absence of a timely filed controverting affidavit, "the court is without jurisdiction to enter any order other than an order transferring the

2. *Art. 8267(C)(2)*: "In the event the notice required is in fact given and no written objection on the part of any legitimately interested party is received by any commissioner within 20 days after said notice is sent, the commissioners shall proceed to act upon the application as they see fit without further proceedings ...."

cause to the proper court." See also, *Crawford v. Modos*, 465 S.W.2d 220, 223 (Tex.Civ. App.—Beaumont 1971, writ dism'd), and authorities therein cited.

The time begins to run, in the venue proceeding, when the plea of privilege is received; under the statute before us in this proceeding, the time begins to run when the notice of filing of the application is sent. We fail to see any reason for not applying the venue rule to this proceeding. If plaintiffs desired to contest the application, under the undisputed testimony of its agent, they had fourteen days after its receipt within which to do so; and, having failed to file a timely objection, they were not entitled to a hearing conducted under the provisions of *Art. 8267(C)(3)*, et seq.

In our consideration of plaintiffs' first point of error, contending that because the Commissioners did not hear any evidence as to the earnings and expenses of the pilots the order increasing the pilotage rates is unlawful, we must first determine the nature of the review of such order.

In essence, the plaintiffs would extend the provisions of the Administrative Procedure and Texas Register Act, *Tex. Rev.Civ.Stat.Ann. Art. 6252–13a (Supp. 1980–1981)* (hereinafter "APA"), to the proceeding before the Commissioners. We are of the opinion that such cannot be done. The administrative agency, although a state agency, does not have "statewide jurisdiction" as required in *Sec. 3(1) of APA*. Consequently, as argued by the Attorney General representing the agency, judicial review of the rate orders of the agency must be under the rules prevailing before the adoption of APA. A succinct statement of such rule is to be found in *Gerst v. Nixon*, 411 S.W.2d 350, 354 (Tex.1966):

> "In the usual judicial review of an administrative order in Texas, the issue is not whether the regulatory agency actually heard and considered sufficient evidence to reasonably support its action, but whether at the time the questioned order was entered there then existed sufficient facts to justify the agency's order. The evidence actually heard by the agen-

cy is not material but the parties are given a full opportunity in their appearance before a judicial body 'to show that at the time the order was entered there did, or did not, then exist sufficient facts to justify the entry of the same'. *Cook Drilling Company v. Gulf Oil Corporation*, 139 Tex. 80, 161 S.W.2d 1035 (1942)."

Under this rule of law, what the Commissioners actually heard or were aware of is immaterial. *Phillips v. Brazosport Savings & Loan Association*, 366 S.W.2d 929, 936–937 (Tex.1963). In attacking the rates established by the Commissioners, plaintiffs labored under the heavy burden of showing that no substantial evidence existed at the time of the hearing to support the action of the Commissioners. As Judge Reavley said in "Substantial Evidence and Insubstantial Review in Texas", *23 Sw.L.J. 239 (1969)*:

> "The usual Texas judicial inquiry [before the adoption of APA] is whether substantial evidence supports the administrative action, but no mind is paid to the evidence that was before the agency. A new proceeding is conducted in court, and the substantiality of the evidence introduced in the new proceeding is examined."

Moreover, as pointed out by Judge Reavley:

> "The order is presumed to be valid and reasonably supported by substantial evidence, and the burden is on the party complaining to show that the order was not reasonably supported by facts existing at the time of the entry of the order." (Id. at 241)

Plaintiffs made no effort to show that the order of the administrative agency was not reasonably supported by facts *existing* at the time of the entry of the order. Instead, relying upon their mistaken belief that a full evidentiary hearing was required under *Art. 8267(C)(3)*, et seq., plaintiffs sought only to show that such evidence was not introduced at such a hearing.

The burden rested upon the plaintiffs, the parties appealing from the order of the administrative agency, to show that it was

not reasonably supported by substantial evidence. *City of San Antonio v. Texas Water Commission,* 407 S.W.2d 752, 758 (Tex.1966); *Warner v. City of Lufkin,* 582 S.W.2d 165, 167 (Tex.Civ.App.—Beaumont 1979, writ ref'd n. r. e.). Consequently, plaintiffs did not discharge the onerous burden under which they labored. *Phillips v. Brazosport Savings & Loan Ass'n,* supra, 366 S.W.2d at 936–937. See also, *United Savings Ass'n v. Vandygriff,* 594 S.W.2d 163, 166 (Tex.Civ.App.—Austin 1980, writ ref'd n. r. e.).

■ The foregoing discussion has disposed of all of the complaints of plaintiffs except those relating to the "outer-bar services" mentioned earlier. Without supporting authority, plaintiffs argue that the Commissioners had no authority to set the rates for the outer-bar services.

The statute governing outer-bar service is *Art. 8274,* and, prior to its amendment, had been construed in *Bloomfield Steamship Co. v. Sabine Pilots Ass'n,* 262 F.2d 345 (5th Cir.1959), cert. dism'd, 368 U.S. 802, 82 S.Ct. 20, 7 L.Ed.2d 15 (1959); and *Sabine Pilots Ass'n v. Lykes Brothers Steamship, Inc.,* 346 S.W.2d 166 (Tex.Civ.App.—Austin 1961, no writ).

However, in 1969, the statute was amended extensively [3] by the addition of an introductory proviso reading:

> "Except for rates fixed pursuant to Article 8267, as amended, for Galveston County ports and for the public ports of Orange, Port Arthur and Beaumont and any privately owned docks or terminals in Orange or Jefferson Counties, the rate of pilotage which may be fixed under Articles 8267 and 8269 on any class of vessels shall not, in any port of this state (except as hereinafter provided) exceed $6.50 for each foot of water . . . ."

We are of the opinion that plaintiffs' contentions are without merit for two reasons: *First,* at the very beginning of amended *Article 8274,* it is stated that this statute expressly excludes setting rates for Galveston, Orange and Jefferson Counties,

and that one must look to *Article 8267* for compulsory pilotage or outer-bar services. It is also clear that *Article 8267* says nothing about one-fourth pilotage.

*Secondly,* the plaintiffs offered no evidence to show that the fees charged exceeded the customary and established rates. Indeed, one pilot testified without contradiction that vessels are not required to seek a pilot to navigate vessels outside the bar. Moreover, the pilot testified that all services were rendered pursuant to a negotiated fee between the ship owners and the pilots.

The trial court found that the rates for the outer-bar service were reasonable, contractual, and had been agreed upon by the owners and the pilots.

All of plaintiffs' points of error have been given careful consideration and found to be without merit. The judgment of the trial court is AFFIRMED.

---

**3.** See Acts 1969, 61st Leg., p. 2325, ch. 785, § 2, effective June 14, 1969.