**Honorable Charles DICKENS, Relator,**

v.

**COURT OF APPEALS FOR the SECOND SUPREME JUDICIAL DISTRICT OF TEXAS, Respondent.**

No. 69490.

Court of Criminal Appeals of Texas, En Banc.

March 25, 1987.

Tim Curry, Dist. Atty. and C. Chris Marshall, Asst. Dist. Atty., Fort Worth, for relator.

Richard Alley, Fort Worth, for respondent.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

This is an original mandamus proceeding brought by the Judge of the 297th District Court in Tarrant County (relator),[1] to contest the issuance, by the Court of Appeals for the Second Supreme Judicial District (respondent), of a writ of mandamus directing relator to allow discovery of a complainant's videotaped statement. Relator argues that the act of permitting discovery of evidence is a discretionary act of a trial judge reviewable only on appeal and, therefore, not the proper subject of a writ of mandamus. We agree and will grant relief.

### I.

James Dean Reynolds is a defendant currently charged with aggravated sexual assault of a child. He is awaiting trial before the Judge of the 297th District Court. The defendant, through three defense attorneys, filed discovery motions seeking access to videotaped interviews of three complainant children which the State intends to use as evidence at trial.[2] Judge Dickens held two hearings on the motions.

In the first hearing on November 2, 1984, Reynolds requested, *inter alia*, that Dr. Helge, a child psychologist, be allowed to view the videotape prior to trial and that a copy of the video tape, at Reynolds' expense, be made for use by his attorneys. Pursuant to Article 39.14, V.A.C.C.P., Judge Dickens denied both requests. Judge Dickens also rejected an oral request that Dr. Helge be excused from the "rule," see Article 36.03, V.A.C.C.P., and be permitted to view the tape when it was offered in front of the jury. However, Judge Dickens ordered the State to make arrangements for all three defense attorneys to view the tape. The defense attorneys subsequently viewed the tape on November 7, 1984.

In the second hearing on November 12, 1984, Dr. Helge testified that he had already viewed the videotape on May 9, 1984, and had made notes during the viewing. Dr. Helge testified that a second viewing

---

1. At the time that the instant case was submitted to this Court, the Honorable Charles Dickens was Judge of the 297th District Court in Tarrant County. However, Judge Dickens died after submission of the instant case to this Court. Because the writ of mandamus issued by the Court of Appeals was directed at Judge Dickens' office as district judge, rather than at him personally, the instant suit can be maintained on behalf of his successor. Cf. Tex.R.App.Pro. 9(c).

2. Reynolds actually has three indictments pending against him for aggravated sexual assault against a child. All three cases were the subject of Reynolds' motions, and the trial judge said his orders applied to each case. Reynolds sought and the Court of Appeals only directed their mandamus at the videotape in Cause 22533D; therefore, we restrict our discussion to that single cause.

of the videotape would be "helpful" and "beneficial."[3] At the conclusion of the hearing, Judge Dickens did not alter his earlier denial of Reynolds' motions.

After the November 2 hearing, Reynolds sought a writ of mandamus from the Second Court of Appeals. *Reynolds v. Dickens*, 685 S.W.2d 479 (Tex.App.—Ft. Worth 1985). The Court of Appeals conditionally granted the mandamus with the expectation ` "that Judge Dickens will vacate his order denying [Reynolds] the right to secure a copy of the videotape at [defendant's] expense and denying [Reynolds'] psychologist expert witness [the right] to view such videotape...." *Id.* at 486. Judge Dickens then filed an application for writ of mandamus with this Court seeking review of the issuance of mandamus by the Second Court of Appeals.[4]

## II.

Under the Texas Constitution, this Court has been granted broad power to issue writs of mandamus:

> Subject to such regulations as may be prescribed by law, the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and, *in criminal law matters*, the writs of *mandamus*, procedendo, prohibition, and certiorari. The Court and the Judges thereof shall have the power to issue such other writs as may be necessary to protect its jurisdiction or enforce its judgments.

Tex. Const., Art. V, § 5 (emphasis added).

Prior to amendment in 1977, this Court only had power to issue writs of mandamus or prohibition to enforce its jurisdiction. *Ordunez v. Bean*, 579 S.W.2d 911 (Tex.Cr. App.1979). Effective January 1, 1978, this Court acquired the additional power to issue writs of mandamus in cases "regarding criminal matters." *Thomas v. Stevenson*, 561 S.W.2d 845 (Tex.Cr.App.1978). The language of Article V, § 5, was further altered in an amendment effective January 1, 1981 by separating the sources of extraordinary writ power into two sentences.[5] As reflected in the final text quoted above, the first sentence of Art. V, § 5, supra, grants this Court broad mandamus power "in criminal law matters;" the second sentence grants this Court power to issue "such other writs as may be necessary to protect its jurisdiction or enforce its judgments." We have since held that these amendments conferred upon this Court general mandamus jurisdiction in criminal law matters "in addition to the previously existent mandamus and prohibition authority to enforce its own jurisdiction." *State ex rel. Wade v. Mays*, 689 S.W.2d 893 (Tex. Cr.App.1985).

Article 4.04, § 1, V.A.C.C.P., simply repeats the language of Article V, § 5, supra. Therefore, the legislature has conferred on this Court the same power to issue extraordinary writs as enumerated in Article V, § 5, supra. See Dally and Brockway, *Changes in Appellate Review in Criminal Cases Following the 1980 Constitutional Amendment*, 13 St. Mary's L.J. 211, 217 (1981).

In the instant case, the Second Court of Appeals issued a writ of mandamus order-

---

**3.** Q. [by defense attorney] Is it going to be necessary in order for you to render an expert opinion in this case, to see those videotapes once again?
A. [by Dr. Helge] It would be *helpful.*
\* \* \* \* \* \*
Q. [by prosecutor] When you looked at the videotapes and made notes, and looked at it for your general impressions of the children, would that also include whether or not you thought they were competent, because that would be something that you just looked at and your general impressions?
A. [by Dr. Helge] I am uncertain because at that time I didn't realize it was an issue that might have been raised. I could look at those [notes] and attempt to make a judgment, and

it would be *beneficial* to see them [the tapes] again."
(R. IC–9, 11) (emphasis added).

**4.** Judge Dickens also attempted to file a petition for discretionary review "to cover all of the bases." The clerk of the Second Court of Appeals refused to file the petition. We then issued mandamus ordering the clerk to file the petition. *Dickens v. Palmer*, 697 S.W.2d 418, (Tex.Cr.App.1985).

**5.** These textual alterations addressed the potential problems noted in *Thomas v. Stevenson*, supra 561 S.W.2d at 847–48 (Onion, P.J., concurring).

ing discovery in a pending felony prosecution. That decision clearly required an interpretation of criminal discovery law. Therefore, this case involves a "criminal law matter" that invokes the power of this Court to issue original writs of mandamus under Article V, § 5, supra.

■ Reynolds, citing *Espinoza v. State*, 669 S.W.2d 736 (Tex.Cr.App.1984), argues that this Court has held that review of mandamus actions of the courts of appeals lies in the Supreme Court of Texas. In *Espinoza*, supra, the defendant sought access to State records through the Open Records Act and filed an application for mandamus with the trial court.[6] The trial court denied the application, the defendant was convicted, the court of appeals affirmed, and the defendant sought review of the denial of mandamus in his petition for discretionary review. We denied relief because the defendant, by filing the mandamus as a mere motion in the course of a pending criminal case, did not properly present the mandamus to the trial court. However, in dicta, this Court stated: "Review of a decree or judgment in a mandamus action would be through the appeals process for civil cases." *Id.*, at 738. In a footnote, we added: "To be distinguished are mandamus actions *instituted* in this Court under our original mandamus jurisdiction. A mandamus suit filed under Section 8 of the Open Records Act is not such a proceeding." *Id.*, at n. 1 (emphasis in original).

In *Espinoza*, supra, we did not hold that *all* mandamus actions must be reviewed through the civil appeals process. We simply noted, in dicta, that a mandamus under the Open Records Act was a civil matter which does not invoke this Court's power under "criminal law matter" jurisdiction in Article V, § 5, supra.

The instant case does not involve a mandamus pursuant to the Open Records Act. The instant case involves a mandamus from a court of appeals ordering criminal discovery in a pending prosecution. We hold that this procedural posture invokes the original mandamus jurisdiction of this Court "in criminal law matters." Art. V, § 5, supra.

## III.

The courts of appeals "shall have such other jurisdiction, original and appellate, as may be prescribed by law." Tex. Const. art. 5, § 6. The Legislature has provided that "[e]ach court of appeals may issue *all* writs of mandamus, agreeable to the principles of law regulating those writs, against a judge of a district or county court." V.T. C.A., Government Code § 22.221(b) (Pamphlet 1987) (emphasis added). Given the plain language of the statute, it would seem that courts of appeals have original jurisdiction to issue writs of mandamus against any judge of a district or county court, without any restriction upon the subject matter of the writ.

### A.

■ Relator argues, however, that the statutory grant of mandamus jurisdiction to the courts of appeals is unconstitutional because the caption to the legislative bill fails to give adequate notice of its effect. See *Ex parte Crisp*, 661 S.W.2d 956 (Tex. Cr.App.1983). However, we need not decide that issue.

Regardless of the adequacy of the notice given by the caption of the bill granting courts of appeals mandamus jurisdiction, this Court "no longer has the power to declare an act of the legislature unconstitutional due to the insufficiency of its caption." *Baggett v. State*, 722 S.W.2d 700 (Tex.Cr.App.1987); see Tex. Const. art. III, § 35(c) ("A law, including a law enacted before the effective date of this subsection, may not be held void on the basis of an insufficient title."). Therefore, we need not address the adequacy of the title or caption.

### B.

■ Relator also argues that the Legislature did not intend to extend mandamus

---

**6.** The Open Records Act, Art. 6252–17a, § 8, V.A.C.S., provides mandamus as the remedy for seeking disclosure of public information in cases of agency refusal.

jurisdiction to courts of appeals in criminal law matters. After tracing the legislative history of mandamus jurisdiction, relator concludes that the Legislature only granted the courts of appeals mandamus jurisdiction over civil law matters and not criminal law matters. We disagree.

Section 22.221(b), supra, was "enacted as part of the state's continuing statutory revision program...." § 1.001(a), supra. It was formerly V.A.C.S., art. 1824 (repealed).[7] Codification of Article 1824, supra, into the Government Code was accomplished without any substantive change in the law. See § 1.001(a), supra. Therefore, construction of § 22.221(b), supra, largely depends upon the meaning of Article 1824, supra.

To assure that no substantive changes were effected by the statutory revision program, the Code Construction Act provides that "[i]n construing a statute, *whether or not the statute is considered ambiguous on its face,* a court may consider[,] among other matters," the object of the statute, the circumstances surrounding its enactment, its legislative history, former statutory provisions, the consequences of a particular construction and its caption, preamble and emergency provision. V.T.C.A., Government Code § 311.023 (Pamphlet 1987) (emphasis added).[8] Therefore, "[i]f there is an obvious and unreconcilable difference between the revised law and the source law, the court has authority to consider the prior statute and apply the law as originally intended." Collins, *Continuing Statutory Revision: Where Did the Civil Practice and Remedies Code Come From?*, 50 Tex.B.J. 134, 136 (1987).

The language of § 22.221(b), supra, closely follows the language of Article 1824, supra. Therefore, we need not rely upon code construction aids to resolve any apparent conflicting language between these two statutes. We need only decide whether the Legislature intended to provide courts of appeals with mandamus jurisdiction over criminal law matters when it passed Article 1824, supra, and codified that statute in § 22.221(b), supra.

In interpreting a statute, a court must "diligently attempt to ascertain legislative intent...." § 312.005, supra. As we noted above, the Code Construction Act suggests several methods for determining that intent, *even when the statutory language is unambiguous.* However, the rules of the Code Construction Act are merely permissive. They "are not exclusive but are meant to describe and clarify common situations in order to guide the preparation and construction of codes." § 311.003, supra. Consequently, common law rules of statutory construction may also be applied.

Under common law, the primary indicator of legislative intent is the language of the statute. *Jones v. Del Andersen & Associates,* 539 S.W.2d 348, 350 (Tex.1976); *Second Injury Fund v. Keaton,* 162 Tex. 250, 345 S.W.2d 711, 714 (1961) ("The intention of the legislature in enacting the statute must be ascertained from the language of the statute itself."). Furthermore, if the language of the statute provides a clear statement of the law, a court must not proceed any further. *Minton v. Frank,* 545 S.W.2d 442, 445 (Tex.1976); *Ex parte Roloff,* 510 S.W.2d 913, 915 (Tex.1974); *Railroad Commission of Texas v. Miller,* 434 S.W.2d 670, 672 (Tex.1968); *Fox v. Burgess,* 302 S.W.2d 405, 409 (Tex.1957) ("... the statute is plain and unambiguous, therefore the rules of construction sought to be applied by the respondents are inappropriate."); *Simmons v. Arnin,* 110 Tex. 309, 324, 220 S.W. 66, 70 (Tex.1920); *Salas v. State,* 592 S.W.2d 653, 656 (Tex.Civ.App.—Austin 1979); *City of Nassau Bay v. Winograd,* 582 S.W.2d 505, 508 (Tex.Civ.App.—Houston [1st] 1979); *City of Fort Worth v. Westchester House, Inc.,* 274

---

7. Article 1824 provided:
   Said Courts [of Appeals] or any Justice thereof, in vacation, may issue all writs of Mandamus agreeable to the principles of law regulating such writs, against any Judge of a District or County Court.

8. The statutory construction aids of § 311.023, supra, apply to all provisions of the Government Code, including § 22.221(b), supra. § 1.002, supra.

S.W.2d 732, 736 (Tex.Civ.App.—Fort Worth 1955).

In *Simmons v. Arnim,* supra, the Supreme Court provided a compelling explanation of a court's duty with regard to accepting plain, unequivocal statutory language:

> Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere. They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

"When the courts abandon the plain, ordinary and customary meaning of words in common usage, statutory construction rests upon insecure and obscure foundations at best." *Byke v. City of Corpus Christi,* 569 S.W.2d 927, 932 (Tex.Civ.App.—Corpus Christi 1978). Consistent with that principle, this Court has held that it could not, "under the guise of statutory construction, ... write into [a] statute that which obviously is not contained therein." *Miles v. State,* 157 Tex.Cr.R. 188, 247 S.W.2d 898, 899 (1952); see also *Schronk v. Gilliam,* 380 S.W.2d 743, 746 (Tex.Civ.App.—Waco 1964).

Of course, a court will occasionally rely upon various types of extrinsic evidence to determine legislative intent, e.g., legislative history or bill caption. However, those sources are to be applied only if the language of the statute is ambiguous. *Kincheloe v. State,* 175 S.W.2d 593, 598 (Tex. Cr.App.1943) (opinion on rehearing) (relying upon plain language of statute rather than contrary intent expressed in emergency clause); *Salazar v. State,* 169 S.W.2d 169, 170 (Tex.Cr.App.1943) (relying upon plain language of statute rather than contrary intent expressed in caption); see also *Republicbank Dallas, N.A., v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985); *Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983); *Calvert v. British-American Oil Producing Co.,* 397 S.W.2d 839 (Tex.1965); *Harris v. City of Fort Worth,* 180 S.W.2d 131, 133 (Tex.1944); *Wallace v. Wolfson,* 672 S.W.2d 287, 289 (Tex.App.—1984) ("If a statute is plain and unambiguous there is no need to resort to the various rules of construction.").

Both Article 1824, supra, and § 22.221(b), supra, specifically provides that the courts of appeals may issue "all" writs of mandamus against a district or county judge. The word "all," when "construed according to the rules of grammar and common usage," § 311.011, supra, removes any jurisdictional restriction upon the subject matter of the writ. Therefore, on their face, neither Article 1824, supra, nor § 22.221(b), supra, exclude criminal law matters from mandamus jurisdiction in the courts of appeals. See *Wolff v. Thornton,* 670 S.W.2d 764, 765 (Tex.App.—Houston [1st] 1984) ("The statute contains no language limiting [courts of appeals'] mandamus jurisdiction to civil cases."). Such clear, unrestricted language must be given its plain meaning without resort to whatever speculative conclusions might result from applying statutory construction aids. Therefore, we hold that the courts of appeals, pursuant to § 22.221(b), supra, have mandamus jurisdiction over criminal law matters concurrent with the mandamus jurisdiction of this Court.

IV.

After this Court was granted the broad authority to issue original writs of mandamus in 1978, we adopted the traditional two-part test for determining whether mandamus might issue. *State ex rel. Vance v. Routt,* 571 S.W.2d 903 (Tex.Cr.App.1978). To obtain relief through writ of mandamus, a relator must establish that 1) no other adequate remedy at law is available and 2) that the act he seeks to compel is ministerial, rather than discretionary, in nature. *Id.;* see also, *Ordunez v. Bean,* supra 579 S.W.2d at 913.

In the instant case, relator has applied to this Court for a writ of mandamus seeking to vacate the mandamus order of the Second Court of Appeals. Under the test adopted in *Vance v. Routt,* supra, relator must show that he has no other adequate remedy at law and that the act of the Second Court of Appeals was ministerial in nature.

### A.

■ In *Jacolos v. State,* 692 S.W.2d 724 (Tex.Cr.App.1985), we held that there is no remedy via petition for discretionary review from an adverse ruling in an original mandamus proceeding.[9] Consequently, relator lacks *any* remedy at law, unless through writ of mandamus. Relator easily meets the "inadequate remedy at law" requirement of the test for issuance of mandamus.

### B.

"Mandamus is an extraordinary writ, and is not issued as a matter of right, but rests largely in the sound discretion of the Court." *Callahan v. Giles,* 137 Tex. 571, 155 S.W.2d 793, 795 (Tex.1941). The Second Court of Appeals, in issuing a writ of mandamus against relator performed, *inter alia,* a discretionary act, to wit: it issued a writ of mandamus against a trial court to allow discovery under a new criminal statute of this State. Therefore, relator is unable to meet the ministerial act requirement of the test for issuance of mandamus. Unless an exception allows us to review the discretionary act of the Court of Appeals, mandamus will not lie in this case.

In the short history of this Court's mandamus jurisdiction in criminal law matters, we have not yet adopted any exception to the traditional two-part test announced in *Routt,* supra. See *Curry v. Gray,* 726 S.W.2d 125 (Tex.Cr.App.1987) (opinion on rehearing). However, we noted the possibility of accepting one exception in *Houlihan v. State,* 579 S.W.2d 213, 218 n. 7

(Tex.Cr.App.1979). In *Houlihan,* supra, the State sought to circumvent the requirement of the presence of a ministerial act by arguing that the trial court abused its discretion. We found it unnecessary to decide whether such an exception should be adopted in that case, but we noted:

> It is axiomatic that the writ of mandamus may not be utilized to revise or correct [an] error in discretion committed in [the] exercise of a judicial duty unless in the particular case there is a clear abuse of discretion. See *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 682 (1956); *State v. Markle,* 363 S.W.2d 332, 335–336 (Tex.Civ.App., Houston 1962).

*Houlihan,* supra.

The Supreme Court of Texas has adopted the clear abuse of discretion standard for reviewing the mandamus action of a court of appeals in civil cases. *Ginsberg v. Second Court of Appeals,* 686 S.W.2d 105, 107 (Tex.1985). Discarding the traditional requirement that a ministerial act be the focal point of the trial court's action before mandamus may issue, the Court held that it had "jurisdiction to review the issuance of the writ of mandamus by the court of appeals, to determine if that issuance constituted a *clear abuse of discretion."* *Ginsburg,* supra (emphasis added). This is consistent with the Supreme Court's long recognition that:

> While it is the general rule that a mandamus will not issue to control the action of an inferior court or public officer in a matter involving discretion, the writ may issue *in a proper case* to correct a clear abuse of discretion.

*Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434, 440 (1959) (emphasis added). The Supreme Court has recognized that adoption of this exception is particularly important "where the remedy by way of appeal is inadequate." *West v. Solito,* 563 S.W.2d 240, 244 (Tex.1978)

■ We believe that the instant case is a proper case for adoption of this exception. Relator has *no* remedy by way of

---

**9.** It is noted parenthetically that Judge Teague would overrule *Jacolos,* supra, providing the relator herein with a remedy by way of petition for discretionary review.

appeal to this Court. *Jacolos,* supra. Moreover, under this Court's present test for issuance of original mandamus in criminal law matters, we would never be able to review mandamus actions of the courts of appeals because those actions could always be characterized as discretionary in nature.[10] Such a circumstance, if allowed to continue, would allow the courts of appeals to interpret criminal law in writs of mandamus independent of any review by this Court. This unusual circumstance requires that we use our original mandamus jurisdiction in criminal law matters to determine whether issuance of mandamus by a court of appeals constitutes a clear abuse of discretion. Therefore, we adopt the clear abuse of discretion standard when reviewing the mandamus actions of the courts of appeals and apply it to the instant case. Cf. *Ginsburg,* supra.

### V.

■ As previously noted, this Court has adopted the traditional two-part test for determining whether mandamus should issue. *Routt,* supra. We have not altered that requirement except by adoption today of the clear abuse of discretion standard in reviewing the mandamus actions of the courts of appeals; and, in fact, the traditional two-part test adopted in *Routt,* supra, has been applied on numerous occasions. See *Houlihan,* supra, and citations therein; *Curry v. Gray,* supra. On at least two occasions, this Court has applied the traditional two-part test in mandamus actions involving criminal discovery. *Texas Dept. of Corrections v. Dalehite,* 623 S.W.2d 420, 424 (Tex.Cr.App.1981); *Tex. Bd. of Pardons & Paroles v. Miller,* 590 S.W.2d 142, 143 (Tex.Cr.App.1979). Therefore, before issuing a writ of mandamus, the Second Court of Appeals was required to find that Reynolds had no other ade-

quate remedy and that he was seeking to compel a ministerial act.

### A.

In a criminal case, a defendant's normal method for challenging pretrial orders is through appeal. See *Ex parte Jones,* 449 S.W.2d 59 (Tex.Cr.App.1970); *Ex parte Conner,* 439 S.W.2d 350 (Tex.Cr.App.1969); *State v. Parr,* 293 S.W.2d 62 (Tex.Cr.App. 1956). However, an appeal may become an inadequate remedy from pretrial discovery orders if a relator could not receive relief on appeal. *Miller,* supra; see also *Womack,* supra, 291 S.W.2d at 683.

In *Miller,* supra, a defendant had issued the Texas Board of Pardons and Paroles a subpoena duces tecum requesting all files and letters concerning the defendant. The Board filed a motion to quash the subpoena, claiming a statutory privilege. The trial judge overruled the motion and ordered the Board to turn over the documents to the defendant. The Board then sought a writ of mandamus from this Court to vacate the trial court's order. We held that the Board did not have any other adequate remedy because the Board could not appeal the trial court's order. Conceivably, the Board could have refused the order and sought a writ of habeas corpus, *after being held in contempt.* However, considering the onerous burden placed on the Board by such review, it would not have been an adequate remedy at law.

■ In the instant case, Reynolds, as the defendant, can seek direct review of relator's pretrial order on appeal. An appeal provides him with a forum in which he can fully develop his claim and receive a meaningful review.

Reynolds concedes that he has a remedy by way of appeal. However, he argues, and the Second Court of Appeals agreed in

---

**10.** These circumstances are also present when a trial court makes a discretionary ruling in a defendant's favor on a pretrial motion which then prevents the State from prosecuting the defendant. However, this Court has no authority to review such a ruling because the State has no right of appeal in criminal actions, even if presented via an application for writ of mandamus. See Tex. Const. art. V, § 26; Article 44.01,

V.A.C.C.P. (Supp.1987); *Curry v. Gray,* supra. However, in the instant case, the defendant initially filed an application for a writ of mandamus with the Court of Appeals. Relator, in the name of the trial court, is seeking review of the court of appeals' decision via writ of mandamus before this Court. Cf. Tex.R.App.Pro. 202(a); *Todd v. State,* 661 S.W.2d 116 (Tex.Cr.App. 1983).

*Reynolds,* supra, that his remedy by appeal is inadequate because it does not sufficiently guarantee him the *right* to discovery prior to his trial. Reynolds, and the Second Court of Appeals in *Reynolds,* supra, rely exclusively upon Texas Supreme Court cases involving civil discovery to support their argument.

In criminal cases, a defendant "does not have a general *right* to discovery of evidence in the possession of the State, even if the evidence is [the defendant's] own statements." *Quinones v. State,* 592 S.W.2d 933 (Tex.Cr.App.1980) (emphasis in original); see also Art. 39.14, V.A.C.C.P. After considering the broad discretion granted to the trial judge in discovery under Article 39.14, supra, we have held that the *right* to discovery is limited to exculpatory or mitigating evidence. *Id.*

In the instant case, the Second Court of Appeals' misplaced reliance upon Texas Supreme Court cases interpreting the broader right of a party in civil discovery, see *Reynolds,* supra, ignored this Court's holding in *Quinones,* supra, which limited the rights of a defendant in criminal discovery. Since there is no proof in the record that Reynolds sought to discover exculpatory or mitigating evidence, Reynolds had no right to further discovery prior to trial.[11]

Reynolds and the Second Court of Appeals offer one final argument for the granting of mandamus as a remedy for the denial of pretrial discovery. They argue that use of mandamus to review discovery orders would provide a more efficient remedy than appeal, insuring a defendant's opportunity to discover evidence prior to trial. Citing several Supreme Court cases, the Second Court of Appeals in *Reynolds,* supra 685 S.W.2d at 484, held that remedying discovery error on appeal "falls well short of a remedy that is as 'equally conve-

nient, beneficial, and effective as mandamus.' ", *Reynolds,* supra at 484, quoting *Jampole v. Touchy,* 673 S.W.2d 569 (Tex. 1984).

We have acknowledged the important purposes of pretrial discovery, "such as the reduction of surprise and the insurance of a fair trial." *Quinones,* supra. We have also observed that the better practice is for the State to allow broad discovery. *Id.* However, a writ of mandamus should not be used to effectuate that purpose. If this Court allowed mandamus to be substituted for appellate review in discovery situations, the trial of cases would be slowed to a crawl, and eventually, mandamus would be substituted for the appellate process in all pretrial matters. As Chief Justice Calvert explained:

> There is sound reason why appellate courts should not have jurisdiction to issue mandamus to control or to correct incidental rulings of a trial judge when there is an adequate remedy by appeal. Trials must be orderly; and constant interruption of the trial process by appellate courts would destroy all semblance of orderly trial proceedings. Moreover, with this type of intervention, the fundamental concept of all American judicial systems of trial and appeal would become outmoded. Having entered the thicket to control or correct one such trial court ruling, the appellate courts would soon be asked in direct proceedings to require by writs of mandamus that trial judges enter orders, or set aside orders, sustaining or overruling ... a myriad of interlocutory orders and judgments; and, as to each, it might logically be argued that the petitioner for the writ was entitled, as a matter of law, to the action sought to be compelled.

---

11. The trial court did not allow Reynolds to make a copy of the videotape; however, the trial court did allow defendant's attorneys to view the videotape. One of those attorneys had already viewed the tape. The trial court did not allow the defendant's expert witness to view the videotape a second time; Dr. Helge admitted

that he had already viewed the tape at an earlier date. Dr. Helge testified that an additional viewing would only be "beneficial" or "helpful." Therefore, Reynolds was not denied the right to discover exculpatory or mitigating evidence. Even if he has been denied such evidence, he

*Pope v. Ferguson*, 445 S.W.2d 950, 954 (Tex.1969).[12]

We find, therefore, that appeal is an adequate remedy in criminal cases for determination of the correctness of a trial judge's pretrial discovery orders. In the instant case, Reynolds failed to show that that appeal would not provide meaningful review or that he was being denied a substantial right prior to trial. Under these circumstances, Reynolds failed to meet the "inadequate remedy at law" requirement for issuance of a writ of mandamus.

### B.

■ Decisions involving discovery in criminal cases are committed to the discretion of the trial court. *Quinones,* supra 592 S.W.2d at 940; see Art. 39.14, supra. This Court has consistently held that the trial judge's acts involving discovery pursuant to Article 39.14, supra, are discretionary and, therefore, are not subject to writ of mandamus. *Dalehite,* supra; *Miller,* supra. In *Dalehite,* supra, the Texas Department of Corrections sought a writ of mandamus to direct a trial judge to rescind an order for production of in-camera inspection of records relating to the defendant. We held:

> The act by the [trial judge] ordering the production of privileged records for his *in camera* inspection was an act within the trial court's discretion, *Texas Board of Pardons and Paroles v. Miller,* supra; therefore, this Court is without authority to issue a writ of manda-

mus ordering the respondent to rescind his order.

*Dalehite,* supra.

■ In the instant case, Reynolds was denied discovery by the trial judge. He sought a writ of mandamus ordering the trial judge to vacate his order. Reynolds sought to remedy a discretionary act of the trial judge through writ of mandamus. Therefore, the Second Court of Appeals was without authority to issue mandamus.

Reynolds argues that, even if the trial judge's denial of discovery under Article 39.14, supra, is discretionary, Article 38.-071, § 2(a)(7), V.A.C.C.P., places a mandatory duty upon the trial court to allow discovery of a videotape before trial.[13] Reynolds concludes, therefore, that he meets the "ministerial act" requirement for seeking mandamus.

Article 38.071, supra, was recently added to the Code of Criminal Procedure and became effective August 29, 1983. See Acts 1983, 68th Leg., p. 3828, ch. 599, § 1. This is the first opportunity that this Court has had to interpret § 2(a)(7), supra.

■ Article 38.071, supra, governs the use of recorded oral statements or testimony of a child 12 years of age or younger in a prosecution of an offense alleged to have been committed against that child. Article 38.071, § 2(a)(1)–(8), supra, requires that the State meet eight requirements before offering the recorded statement into evidence. To meet the seventh requirement, Article 38.071, § 2(a)(7), supra, the State must make available the taped statement

---

will have an opportunity to argue for relief on appeal if convicted.

**12.** We acknowledge that the Supreme Court has since rejected Chief Justice Calvert's reasoning and now allows mandamus to substitute for appeal in reviewing civil discovery orders. *Jampole v. Touchy,* supra. However, we find the majority opinion in *Pope,* supra, still to be persuasive in criminal discovery. In addition, we note that Justice Barrow, in his dissenting opinion in *Jampole,* supra, 673 S.W.2d at 578, warned:

> Less than one year ago [the Supreme Court] observed that over the past twenty-five years it had been flooded with mandamus actions to either compel or deny discovery. Today's decision effectively insures that this flood will

continue and increase into a rampage. The majority has failed to heed the warning echoed by our predecessors against 'entering the thicket' by constant interruptions of the trial process. We have now not only 'entered the thicket,' we have become totally enshrouded in that thicket.

**13.** Article 38.071, supra, provides in pertinent parts:

> Sec. 2. (a) The recording of an oral statement of the child made before the proceeding begins is admissible into evidence if:
>
> \* \* \* \* \* \*
>
> (7) the defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence.

of the complainant to the defendant or the defendant's attorney before offering it into evidence.

In the instant case, Reynolds interprets this seventh requirement as giving him the right, through discovery, to receive a copy of the tape prior to trial and the right to show the tape to his expert witness prior to trial. Reading Article 38.071, § 2(a)(7), supra, broadly, Reynolds argues that the seventh requirement places a ministerial duty upon the trial judge to order such discovery.

We reject Reynolds' interpretation of Article 38.071, supra. His claim is not supported by the clear language of Article, 38.071, supra. Article 38.071, supra, simply enumerates the requirements for admissibility of a recorded statement of a child 12 years of age or younger for use at a trial where an offense is alleged to have been committed against that child. It is not a new vehicle for discovery.

▇▇ In the instant case, if the State intends to offer a videotape statement under Article 38.071, supra, then the State must meet all eight admissibility requirements. This means, *inter alia*, that at some point prior to offering the tape at trial the State, pursuant to Article 38.071, § 2(a)(7), supra, must allow Reynolds or his attorneys an opportunity to view the tape. Since all three defense attorneys and the expert witness have already viewed the videotape, the State has met the seventh requirement. Therefore, any argument that Reynolds might make regarding the ministerial duty created by Article 38.071, § 2(a)(7), supra, is moot. The trial judge has already satisfied the seventh requirement.

Any discovery beyond the admissibility requirements of Article 38.071, supra, is governed by the broad discretion granted to the trial judge in Article 39.14, supra. Reynolds' request that he be given a copy of the tape was denied by Judge Dickens pursuant to his discretion under Article 39.14, supra. No ministerial act was involved when he made that decision.

We find, therefore, that Reynolds did not seek to compel a ministerial act through writ of mandamus. The Second Court of Appeals, by ordering relator to vacate his order denying discovery, failed to require Reynolds to meet the ministerial act requirement before issuing mandamus.

The Second Court of Appeals failed to follow either part of the two-part test adopted by this Court in *Routt*, supra, for deciding whether mandamus may issue. Reynolds had an adequate remedy by way of appeal and did not seek to compel relator to perform a ministerial act. Therefore, we find that the issuance of mandamus by the Second Court of Appeals was a clear abuse of discretion.

We conditionally grant relator's application for a writ of mandamus. If the Court of Appeals does not withdraw its order of mandamus, then writ will issue.

WHITE, J., concurs in result.

CLINTON, Judge, dissenting.

A bare majority would have this Court bestow upon courts of appeals jurisdiction, power and authority to issue writs of mandamus in criminal law matters, and then test propriety of their exercise of the grant by a standard developed on the civil side out of considerations inapposite to criminal law. I dissent to the doing in this cause because Relator is deceased, and to what is ultimately done because erroneous in both aspects.

*Mandamus Jurisdiction*

When we distill Part III. B. of the majority opinion its essence is deceptively simple: "The word 'all' [in former article 1824, V.A. C.S., and Government Code, § 22.221(b)] *removes* any jurisdictional restriction upon the subject matter of the writ. Therefore, on their face neither.... *exclude[s]* criminal law matters from mandamus jurisdiction in the courts of appeals." At p. 548.[1]

Constitutionally, *original* jurisdiction of courts of appeals must be "*prescribed by law*," Article V, § 6. The germane ques-

---

1. All emphasis is mine throughout unless otherwise stated.

tion is what has the Legislature *specified with authority,* not that which it has "removed" or not "excluded." In context even the word "all" is ambiguous.[2] The answer may indeed be found by resorting to construction aids, and to that endeavor I now turn.

Before 1978 when it was considered a civil action the Supreme Court of Texas alone had general jurisdiction, power and authority to issue the writ of mandamus against a district judge pertaining to a criminal case—for purposes other than to enforce its own jurisdiction and to compel a judge to proceed to trial and judgment in a cause. Article V, § 3; articles 1733 and 1734; e.g., *Pope v. Ferguson,* 445 S.W.2d 950, 952–957 (Tex.1969), and *State ex rel. Pettit v. Thurmond,* 516 S.W.2d 119, 121 (Tex.1974). Then this Court had no such jurisdiction, power and authority. *Pope v. Ferguson, supra,* 445 S.W.2d at 955.

Effective September 1, 1981, however, Article V, § 3 was substantially amended. Now the Supreme Court is to exercise the judicial power of the State "except as otherwise provided in this Constitution," and other provisions therein make clear that excepted are, *inter alia,* "criminal law matters." See also article 1733, as amended by Acts 1981, 67th Leg. Ch. 291, p. 773, § 19 (S.B. 265), now Government Code, § 22.-002(a).

Also, Article V, § 5 grants generally to this Court "final appellate jurisdiction ... in all criminal cases of whatever grade, with such exceptions and under such regulations as may be provided in this Constitution or as prescribed by law." More specifically, "appeal of all cases in which the death penalty has been assessed" shall be

to this Court. However, "appeal of all *other criminal cases* shall be to the Courts of Appeal [sic] as prescribed by law." Such is the allocation of strictly *appellate* jurisdiction in "criminal cases." [3]

"In *addition,* [this Court] may, on its own motion, *review* a decision of a Court of Appeals in a *criminal case* as provided by law." Review is, of course, a matter of "sound judicial discretion."

Also, subject to such regulations as may be prescribed by law, this Court and its judges are empowered to issue the writ of habeas corpus and, *"in criminal law matters,* writs of mandamus, procedendo, prohibition and certiorari." [4] Separately, they have the power to issue "such other writs ... to protect its jurisdiction or enforce its judgments."

Constitutionally, then, this Court has jurisdiction, power and authority in five particulars, *viz:*

one, to decide a death penalty case on *direct appeal;*

two, to review a decision of a court of appeals in a *criminal case;*

three, to issue the Great Writ;

four, in *criminal law matters* to issue extraordinary writs;

five, to issue protective and enforcive writs.

Consistent with the mandate in Article V, § 5 that appeals of all criminal cases except those in which death penalty is assessed shall be to courts of appeals, Article V, § 6 grants to courts of appeals *"appellate jurisdiction* [over] all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law [and] such other jurisdic-

---

**2.** Former article 1733, V.A.C.S., now Government Code, § 22.002(a), similarly provides that the Supreme Court may issue *"all writs of ... mandamus* agreeable to the principles of law regulating those writs against a district judge [et cetera]." But we will see that authority does not extend to "criminal law matters," and in that particular the Supreme Court has none. Thus, in context "all" does not embrace "criminal law matters."

**3.** There is, of course, the right of appeal to this Court from any judgment or order denying bail

pursuant to Article I, § 11a, but that special situation is not pertinent to this discussion and will not be further noticed.

**4.** Effective January 1, 1978, an amendment to Article V, § 5 first identified the power of the Court to issue extraordinary writs *"regarding criminal matters." State ex rel. Vance v. Routt, Judge,* 571 S.W.2d 903, 905 (Tex.Cr.App.1978); *Thomas v. Stevenson, Judge,* 561 S.W.2d 845, 846–847 (Tex.Cr.App.1978).

tion, *original and appellate*, as may be prescribed by law."

Articles 4.03 and 4.04, V.A.C.C.P. confirm and implement constitutional grants of jurisdiction, power and authority to courts of appeals and to this Court, respectively.

While it is true that there are neither constitutional nor statutory definitions of the terms, whatever a "criminal case" may be both sources make clear that appellate jurisdiction pertains to a "criminal case." Though the term "criminal law matter" may be broad enough to include "criminal case" for some purposes, facially the provisions distinguish one from the other by prescribing differently those essential functions inhering in each: a criminal case is decided on direct appeal in exercise of appellate jurisdiction under one set of rules, while a criminal law matter is decided in exercise of original jurisdiction under other rules, including maxims of equity.[5]

Which brings us directly to the question of jurisdiction, power and authority of courts of appeals to entertain and issue writs of mandamus in criminal law matters. I find that they did not have any under former article 1824, nor do they have any under Government Code, § 22.221(b).

As developed *ante*, by amendment to Article V, § 5 in 1978 this Court was granted extraordinary writ jurisdiction "regarding criminal matters," and in 1981 in "criminal law matters." See *Thomas v. Stevenson*, 561 S.W.2d 845 (Tex.Cr.App.1978 (Onion, P.J., concurring); see also Dix, Appellate Review by Mandamus and Prohibition in Texas Criminal Litigation, 17 Texas Tech L.R. (1986) 75, at 84.

Under articles 1823 and 1824, V.A.C.S., then extant, a court of civil appeals had mandamus authority only in protection of its jurisdiction and to order a trial judge to proceed to trial and judgment. *Crofts v. Eighth Court of Civil Appeals*, 362 S.W.2d 101, 104 (Tex.1963). As also amended in 1981, Article V, § 6 did not grant original writ jurisdiction, power and authority to courts of appeals. Instead it provided they

shall have such "as may be prescribed by law." When the 67th Legislature enacted S.B. 265 in 1981 to implement the constitutional amendments that, *inter alia*, bestowed on courts of appeals only *appellate* jurisdiction over criminal cases, it did *not* provide extraordinary writ jurisdiction over criminal law matters. Rather, it left undisturbed the "jurisdictional limitations" of articles 1823 and 1824. *Allen v. Guarino, Judge*, 635 S.W.2d 129 (Tex.App.—Houston [1st]) 1982.

Section 19 of S.B. 265 did make a conforming addition to former article 1733, V.A.C.S., as underscored below, *viz:*

"The Supreme Court ... shall have jurisdiction and authority to issue writs of procedendo, certiorari and all writs of quo warranto or mandamus agreeable to the principles of law regulating such writs, against any district judge, or Court of Appeals or justices thereof, or any officer of State Government, except the Governor <u>or the Court of Criminal Appeals or the judges thereof</u>."

Then, in Acts 1983, 68th Leg., Ch. 839, p. 4767, the Legislature passed

"An act relating to the jurisdiction of the supreme court and the courts of appeals in certain *civil cases* and the issuance of the writ of mandamus by the courts of appeals or the justices."

With language obviously taken in part from article 1733, see *ante*, Section 3 of that act amended former article 1824, Revised *Civil* Statutes of Texas, as amended, to read as follows:

"Said Courts or any Justice thereof, in vacation, may issue all writs of Mandamus agreeable to the principles of law regulating such writs, against any Judge of a District or County Court."

It has been found that a "Bill Analysis" prepared by its author indicates the intent of that section is "to expand the mandamus power of the Court of Appeals" because they were being denied the more "extensive mandamus power" vested in the Supreme Court. Nevertheless, some have argued that the explanation by the author of

---

**5.** As to mandamus, see 38 Tex.Jur.3d 246, § 118.

In general, equitable principles.

the bill will not support a reasonable inference of civil jurisdiction only, noting much like the majority today, that the plain language is "unrestrictive," and suggesting that the Legislature must have been aware that two years earlier courts of appeals had been vested with "criminal appellate jurisdiction."

Of course, vesting "criminal *appellate* jurisdiction" is not to grant *"original* jurisdiction" in "criminal law matters." Moreover, the setting of developments in which article 1824 was amended in 1983 demonstrates conclusively that the foregoing analysis, as well as the simplistic approach by the majority, is flawed.

The 1981 set of amendments to Article V made indisputable the following propositions:

first, that excepted from the judicial power vested in the Supreme Court are "criminal law matters," § 3;

second, that granted to this Court is the appellate, review and original jurisdiction, power and authority discussed and delineated *ante* at pages 3–4, particularly that "in criminal law matters" it has the power to issue extraordinary writs, § 5;

third, that bestowed on courts of appeals is appellate jurisdiction in criminal cases, and such other jurisdiction, *original and appellate,* as may be prescribed by law, §§ 5 and 6.

The general jurisdiction, power and authority constitutionally granted this Court has never been implemented by any legislative enactment contained in the Revised Civil Statutes. See Title 38, V.A.C.S. Along with all other courts having criminal jurisdiction, that has always been provided in the extant code of criminal procedure. See former Chapter Four, especially Article 4.01, 4.03 and 4.04, C.C.P. 1965.

When the Legislature enacted S.B. 265, supra, in 1981, it completely overhauled the statutory scheme of things to comport with the constitutional amendments. In § 19 by amending article 1733 to bar the Supreme Court from issuing writs of mandamus against this Court and its judges, it not only acknowledged that by virtue of revised § 3 the Supreme Court no longer had any civil mandamus jurisdiction over criminal law matters, but it also provided for the supremacy of this Court in criminal law matters. Furthermore, though several sections in Title 38 were amended, none prescribes the general jurisdiction, power and authority of this Court, see §§ 26–29; while several sections of Title 39, dealing with jurisdiction of courts of appeals, were amended none prescribes the newly acquired appellate jurisdiction in criminal cases, see §§ 38–41.[6]

Instead, conforming to past practice, the Legislature placed all statutory provisions for jurisdiction, power and authority of courts of appeals in criminal cases solely in the code of criminal procedure. Thus § 101 amended Article 4.01 to include among courts having jurisdiction in "criminal actions" the courts of appeals; § 102 revised Article 4.03 (then prescribing appellate jurisdiction of this Court in criminal cases) to award to courts of appeals "appellate jurisdiction ... in all criminal cases" except death penalty cases, and to exclude certain criminal cases appealed from an inferior court to a county court. As revised, Article 4.03 is absolutely silent as to any extraordinary writ jurisdiction in "criminal law matters." Of course, the Legislature was not obliged to provide that writ jurisdiction, but silence on that matter while otherwise revising the entire statutory scheme speaks words to me.

In the very next § 103, however, the Legislature did amend Article 4.04 to embrace both writ jurisdiction in criminal law matters and appellate and review jurisdiction in criminal cases, as constitutionally granted to this Court. See pages 544–545.

With the constitutional amendments and statutory provisions, then, as things stood on September 1, 1981, *this Court—and no other in the criminal justice system—possessed specified jurisdiction, power and*

---

**6.** Indeed, the Legislature passed over article 1824 but did amend article 1824a, providing concurrent authority with Supreme Court to issue the writ of habeas corpus in certain civil cases. See § 41.

*authority to issue extraordinary writs in criminal law matters.*

Therefore, in 1983 when the author of the bill explained that in amending article 1824, Revised *Civil* Statutes his purpose was "to expand the mandamus powers of the Court of Appeals" by granting *"extensive mandamus power [of the Supreme Court] which is denied the Courts of Appeals,"* he could only be referring to jurisdiction of courts of appeals in *civil cases.* By then, as has been demonstrated *ante,* the Supreme Court had no jurisdiction, power or authority in *criminal law matters,* having been stripped of that by Article V, § 3.[7] Since he took the term "all writs" and related language directly from article 1733, he surely intended them to have the same meaning and effect, and no more.

To be kept in mind is that courts of appeals have only that original jurisdiction "as may be *prescribed* by law." Article V, § 6. The Legislature has not yet *specified* they are to have jurisdiction, power and authority to issue the writ of mandamus in criminal law matters. To the unsupported conclusion of the majority, I respectfully dissent.[8]

### *Reviewing Standard*

Since I also disagree with its belief that adoption and application of "the clear abuse of discretion standard" is necessary in this cause or generally when reviewing "mandamus actions of lower courts" in discovery matters, I dissent. The essence of my objection is that while the majority derives its *review standard* from opinions of the civil side, policy considerations and *rationale* for the standard in discovery matters in civil cases are not pertinent to a stricter limitation on discovery more recently devised by this Court for criminal cases. At pp. 550–551.

The notion of "clear abuse of discretion" did not originate in *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677 (1956), but in a context of rules of procedure that appears to be the first time the Supreme Court actually based issuance of a writ of mandamus on it. Involved was refusal of a trial court under Tex.R.Civ.Pro. Rule 174(b) to grant plaintiff in a complex suit against many defendants over interests in an estate a severance of a claim against one defendant who successfully asserted his right to a stay of all proceedings against him under the Soldiers' and Sailors' Civil Relief Act.

Recognizing that "use of the permissive word 'may' imports the exercise of discretion *in such matters,*" the Supreme Court said that discretion vested in a trial court by the rule is not unlimited discretion—the court is "required to exercise a sound and legal discretion within limits created by the circumstances of each case." Noting that "the express purpose of the rule is to *further convenience and avoid prejudice, and thus promote the ends of justice,*" the Supreme Court formulated a rationale for its conclusion, *viz:*

"When all the facts and circumstances of the case unquestionably require a separate trial to prevent manifest injustice, and there is no fact or circumstance supporting or tending to support a contrary conclusion, and the legal rights of the parties will not be prejudiced thereby, there is no room for the exercise of discretion. The rule [174(b)] then is peremptory in operation and imposes upon the court a *duty* to order a separate trial. While the refusal to grant a separate

---

7. Just now the Government Code, which is intended to recodify without making a substantive change in the law, § 1.001, carries forward prior statutory denial to the Supreme Court of any jurisdiction in criminal law matters, § 22.001. But as disposition and derivation tables make plain, the Government Code codifies only civil statutes. Accordingly, nowhere else in Subchapters B., Court of Criminal Appeals; or C., Courts of Appeals, is there any designated allocation of jurisdiction, power or authority, appellate or original, in criminal cases or in criminal law matters—not even to this Court! If one means to include this Court and courts of appeals, a finding that the Government Code "confer[s] criminal jurisdiction" cannot be supported.

8. Especially unsupported is the statement that courts of appeals have mandamus jurisdiction *"concurrent* with the mandamus jurisdiction of this Court." At p. 548.

trial under such circumstances is usually termed a clear abuse of discretion, it is nevertheless a violation of a *plain legal duty.*"

*Id.,* 291 S.W.2d 683. And performance of a plain legal duty may, of course, be enforced by mandamus.

*Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434 (1959), is a progeny of mandamus proceedings implicating rulings of a trial court on a bill of discovery.[9] Relying on them and *Womack v. Berry,* supra, the Supreme Court did find that writ of mandamus may issue "to correct a clear abuse of discretion." *Id.,* 328 S.W.2d at 440. The trial judge had ordered Crane, defendant in a suit over ownership of real property, to turn over to attorney for plaintiff certain papers, including his federal income tax return for a given year; Crane sought relief from that order by way of mandamus. Reviewing the law relating to a bill of discovery and rejecting his contention that tax returns are privileged, the Supreme Court concluded that while the order for discovery was "a correct one" and issuing it not an abuse of discretion, there was an abuse of discretion in ordering inspection of the entire return without first inspecting it "to determine what portions were relevant and material to this cause." *Id.,* at 328 S.W.2d at 440–441. This was viewed in

*Maresca v. Marks,* 362 S.W.2d 299, 301, (Tex.1962), as "affording extraordinary relief when no discretion has been exercised." [10]

Traditionally and by rules of procedure, then, on the civil side courts and parties place a high value on liberal discovery. As the Supreme Court pointed out in *Jampole v. Touchy,* 673 S.W.2d 569 (Tex.1984):

"[T]he ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed. [citations omitted]. For this reason, discovery is not limited to information that will be admissible at trial. .... To increase the likelihood that all relevant evidence will be disclosed and brought before the trier of fact, the law circumscribes a significantly larger class of discoverable evidence to include anything calculated to lead to the discovery of material evidence. [citations omitted]. This broad grant is limited, however, by the legitimate interests of the opposing party...."

*Id.,* at 573. Indeed, its remedial actions in that case illustrate how the Supreme Court will critically examine denials of discovery. *Id.,* at 573–575. It also found that appeal is not an adequate remedy for several reasons. *Id.,* at 576.[11]

9. See, e.g., *Southern Bag & Burlap Co. v. Boyd,* 120 Tex. 418, 38 S.W.2d 565 (1931): "It is settled law of this state, that [the trial court] has jurisdiction in the premises to make a proper order [for discovery], and this court will not interfere unless there is an abuse of the trial judge's discretion" (finding an abuse of discretion, however, the Supreme Court "modified" the order in certain particulars, *id.,* 38 S.W.2d at 570); and *Rush v. Browning, Judge,* 103 Tex. 649, 132 S.W. 763, 765 (1910) (in a suit between former partners, given that under that particular relationship a partner is entitled to inspect books of account, the *duty of the district judge* is to secure to a partner his right to inspect the books and to use them in the preparation and conduct of his defense).

10. Later, however, the Supreme Court cautioned, "The reasoning in *Crane v. Tunks....* does not necessarily apply where a bill of discovery has been *denied.*" *Morris v. Hoester,* 370 S.W.2d 451 (Tex.1963). But see *Barker v. Dunham,* 551 S.W.2d 41, 42 (Tex.1977), and *Allen v. Humphreys,* 559 S.W.2d 798, 901 (Tex.1977), in which denial was reviewed by way of manda-

mus. Indicating that it was following the lead of the Supreme Court, the Fort Worth Court of Appeals noticed both in the instant cause. *Reynolds v. Dickens,* 685 S.W.2d 479, 484 (Tex. App.—Fort Worth 1985).

11. One, that "it is unlikely [Jampole] would be able to show that the trial court errors were harmful under the standard set out in [applicable rules of civil procedure,] [b]ecause the evidence exempted from discovery would not appear in the record, the appellate courts would find it impossible to determine whether denying the discovery was harmful."

Another, that "requiring a party to try his lawsuit, debilitated by the denial of proper discovery, only to have the lawsuit rendered a certain nullity on appeal, falls well short of a remedy that is 'equally convenient, beneficial, and effective as mandamus.' [citations omitted]."

After 1983, when writ power of courts of appeals *vis a vis* judges of district and county courts was expanded, see Government Code, § 22.221(b), the Supreme Court began to review writs issued by them. *Jampole v. Touchy* is the basis for the following statement of the Supreme Court in *Ginsburg v. Fifth Court of Appeals*, 686 S.W.2d 107 (Tex.App.1985):

"The proceeding in this court is an original mandamus proceeding. Tex. Rev.Civ.Stat.Ann. art. 1733 authorizes this court to issue writ of mandamus to appellate courts as well as to other entities. Therefore, this court has jurisdiction to review the issuance of the writ of mandamus by the court of appeals, to determine if that issuance constituted a clear abuse of discretion. *Jampole v. Touchy*, 673 S.W.2d 569 (Tex.1984)."

The Supreme Court stated the underlying procedural facts substantially as summarized in the margin.[12] Rejecting the claim of psychotherapist-patient privilege asserted by plaintiff, the Supreme Court then analyzed the situation thus presented, *viz:*

"The admission of evidence and the scope of discovery rests within *the discretion of the trial court.* The trial court was *properly within its discretion* when it deemed [plaintiff's] medical records discoverable. The court of appeals, therefore, abused its discretion by ordering the trial court to refrain from further discovery pertaining thereto, for *the denial of proper discovery constitutes a 'clear abuse of discretion.' Jampole ...*"

*Id.,* at 108.

This review of early and late opinions reveals the importance of "proper discovery" on the civil side and a ready availability of the writ of mandamus to ensure that it is not denied. Furthermore, a careful reading of the above quoted holding in *Ginsberg* produces an understanding that, as stated in *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916 (Tex.1985), "Our focus remains on the trial court's order *regardless* of the court of appeals' decision on mandamus." *Id.,* at 918.[13]

In the criminal justice system, however, when a motion for discovery is contested by the prosecution most courts are, to put it gently, chary, and this Court has given mere lip service to a more liberal practice—just as it does again today at page 16 of the majority opinion.[14] As demonstrated in

---

**12.** During the course of giving her deposition plaintiff revealed she had been treated by a psychiatrist, but objected to giving defendant access to medical records relating to that treatment. The trial court ordered that she produce them and, examining them *in camera,* found them relevant and discoverable and released them to defendant; it then ordered the psychiatrist be deposed; plaintiff objected on the basis of privilege; the trial court denied her motion for a protective order. The patient sought and the court of appeals issued a writ of mandamus denying defendant the right to depose the psychiatrist; the latter died before the court of appeals considered defendant's motion for rehearing and dismissed the pending mandamus proceeding. However, it refused to withdraw its prior opinion. Defendant applied to the Supreme Court for mandamus against the court of appeals.

Meanwhile, back in the trial court defendant sought to depose the doctor's secretary as custodian of records in order to authenticate his medical records. On the strength of the prior opinion by the court of appeals the trial court denied his right to depose; the defendant applied to the court of appeals for writ of mandamus only to be denied relief. He again applied to the Supreme Court for writ of mandamus, and both applications were considered jointly.

**13.** The Supreme Court explained its functions while thus focusing, *viz:*

"We make an independent inquiry whether the trial court's order is so arbitrary, unreasonable, or based upon so gross and prejudicial an error of law as to establish an abuse of discretion. .... Although we may believe that the court of appeals has exercised better judgment than the trial court in the matter, we must nevertheless grant the mandamus and direct the court of appeals to vacate its judgment if there is some basis in reason and law for the order of the trial court. *If the matter is truly one of discretion, such discretion lies with the trial court. An appellate court may not substitute its discretion for that of the trial court." Id.,* at 918.

**14.** Early on the Court read and applied Article 39.14 V.A.C.C.P. literally: A motion for discovery must specifically designate the evidence sought and reflect "good cause," and accused must show that the evidence is material, that it is not privileged, that the request is reasonable and that the designated items are in the possession or control of the State or any of its agen-

the margin, the stark reality is that this Court has taken a simple job of fulfilling statutory requirements for obtaining discovery—practically like procedure on the civil side—and turned it into a requirement that in its constitutional sense "materiality" to the defense of an accused must be shown when discovery is refused. Unlike a broad scope of discovery in civil cases, in a criminal prosecution, as the majority opinion emphasizes, "the *right* to discovery is limited to exculpatory or mitigating evidence." At p. 551.[15]

It follows that denial of that "right" implicates more than mere discretion. As

cies before overruling the motion is an abuse of discretion with consequent prejudice to accused. *Sonderup v. State,* 418 S.W.2d 807, 808 (Tex.Cr.App.1967); *Bell v. State,* 442 S.W.2d 716, 717 (Tex.Cr.App.1969) (adding "and withheld by the state," presumably under the influence of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)); *Smith v. State,* 455 S.W.2d 748, 753–754 (Tex.Cr.App.1970); *Campos v. State,* 468 S.W.2d 81, 82 (Tex.Cr.App.1971); *Smith v. State,* 468 S.W.2d 828, 830 (Tex.Cr.App.1971). Even when the requisite showing was made, however, the Court then held if an appellant had not "affirmatively shown how he was injured by the court's refusal to allow inspection ..., denial of the motion for inspection constituted harmless error," *Bates v. State,* 587 S.W.2d 121, 131 (Tex.Cr.App.1979), and cases cited therein.

With advent of *Brady v. Maryland,* supra, the socalled "Brady" motion for discovery came in vogue. When the prosecution was obliged to but failed to disclose "Brady material," the standard applied was whether material or testimony not disclosed "may have had an effect on the outcome of the trial." *Means v. State,* 429 S.W.2d 490, 494 (Tex.Cr.App.1968); *Ex parte Cherry,* 456 S.W.2d 949 (Tex.Cr.App.1970); *Crutcher v. State,* 481 S.W.2d 113 (Tex.Cr.App.1972); *Ridyolph v. State,* 503 S.W.2d 276 (Tex.Cr.App.1974). In *Quinones v. State,* 592 S.W.2d 933 (Tex.Cr.App.1980), the Court recounted:

"Traditionally, this Court has declined to find reversible error stemming from discovery if the defendant was not denied access to exculpatory or mitigating evidence which would have effected the outcome of the trial in his favor. [host of citations omitted]." *Id.,* at 941.

That traditional approach is now passé, for soon the Court began to take a harder line in reviewing claimed errors in denying discovery, again as related in *Quinones, viz:*

"Texas has chosen to follow a rule which requires the trial court to permit discovery only if the evidence sought is material to the *defense* of the accused [emphasis in original].

the prosecutor is presumed to know when there is no request for discovery, so where one is made the trial judge must make a judicial determination that the evidence an accused seeks to discover is "highly probative of innocence," such that it would create a reasonable doubt as to guilt. *Agurs,* 427 U.S., at 110, 96 S.Ct., at 2400, 49 L.Ed.2d 342 (1976).

Therefore, a ruling denying discovery in a criminal case is no longer a matter of exercising discretion, despite recurring rote statements to that effect. Necessarily the judge has found the material sought has so little probative significance in the premises

* * * * More recently in *Stone v. State,* 583 S.W.2d 410 (Tex.Cr.App.1979) and *Frank v. State,* 558 S.W.2d 12 (Tex.Cr.App.1977), this Court has expressly chosen *to define 'materiality' under Texas law in the due process terms employed by the Supreme Court* in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), one of the more recent elaborations on the disclosure requirements of *Brady v. Maryland,* supra.

'.... unless the omission deprived the defendant of a fair trial there was no *constitutional violation* requiring that the verdict be set aside; and absent a *constitutional violation,* there was no breach of *the prosecutor's constitutional duty* to disclose ... The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the *constitutional sense.*' The Court stated that the test for materiality imposes a higher burden on the defendant than the harmless error standard. In determining materiality, the omission must be 'evaluated in the context of the entire record' and *constitutional* error is committed only 'if the omitted evidence creates a reasonable doubt that did not otherwise exist.' *Stone v. State,* 583 S.W.2d at 415, in part quoting *United States v. Agurs,* 427 U.S. at 108–10, 112, 96 S.Ct. 2392."

And that is the status of discovery in criminal cases today. See *Robinson v. State,* 701 S.W.2d 895, 900 (Tex.Cr.App.1985); but cf. *Carmona v. State,* 698 S.W.2d 100, 105 (Tex.Cr.App.1985).

**15.** In light of *Frank v. State, Stone v. State* and *Quinones v. State,* all supra, in note 14, that even "mitigating evidence" bearing on punishment is still discoverable seems most doubtful. It is under *Brady v. Maryland,* supra, but *Frank, Stone* and *Quinones* are based on *Agurs* not *Brady.* See *Iness v. State,* 606 S.W.2d 306 (Tex.Cr.App.1980) (Clinton dissenting, 324, n. 5). Where a request for designated material is made, I would adhere to *Brady v. Maryland.*

that it would not raise a reasonable doubt; that is, we should hold, a conclusion of law. If an accused believes that conclusion is erroneous, his remedy is to raise the alleged error on direct appeal. Viewed in that light the ruling by the trial judge is not reviewable by way of application for writ of mandamus. *State ex rel. Curry v. Gray,* 726 S.W.2d 125 (Tex.Cr.App.1987); *State ex rel. Wade v. Mays,* 689 S.W.2d 893 (Tex.Cr.App.1985); *State ex rel. Holmes v. Denson,* 671 S.W.2d 896 (Tex.Cr.App.1984).

### *Conclusion*

Accordingly, I would hold that courts of appeals are without jurisdiction, power and authority to issue a writ of mandamus in criminal law matters under Government Code, § 22.221(b). But even assuming *arguendo* the court of appeals has it, in this cause we need not create a new general standard to review its conditional grant, for unlike discovery on the civil side the issue is not whether the trial judge abused his discretion in denying Reynold's motion but whether his conclusion of law basing that denial is reversible error—an issue to be decided on appeal.[16]

For those reasons I respectfully dissent.

McCORMICK and DUNCAN, JJ., join.

---

**16.** While not addressed in the majority opinion, there are yet other threshold questions: By what authority did the late Judge Dickens challenge the conditional grant of writ of mandamus by the court of appeals and by what right is his successor entitled to relief? *Knowles v. Scofield,* 598 S.W.2d 854, 860 (Tex.Cr.App.1980); *State ex rel. Wade v. Mays, supra,* 689 S.W.2d at 897–898. As the adverse party in the trial court, the State through her district attorney may have a sufficient interest to seek relief, *Johnson v. Fourth Court of Appeals, supra,* but representing Relator before this Court it does not assert any entitlement on his behalf so free from doubt as to be "clear and indisputable."